80 So.2d 850

Leonard W. BROUSSARD

v.

R. H. GRACEY DRILLING COMPANY et al.

In re Leonard W. Broussard Applying for Certiorari or Writ of Review to the Court of Appeal, First Circuit.

No. 41812.

April 25, 1955.

Rehearing Denied May 23, 1955.

Roger C. Edwards, Abbeville, for plaintiff-appellant.

Lawes, Hickman & Brame, Lake Charles, Gravel & Downs, Alexandria, for defendants-appellants-respondents.

McCALEB, Justice.

This suit for permanent and total disability under the Workmen's Compensation Law, R.S. 23:1021–1351, was filed on December 8, 1951, against R. H. Gracey Drilling Company and its compensation insurer, Employers Mutual Liability Insurance Company of Wausau, Wisconsin. Plaintiff's original claim was based on injuries to his back sustained on November 6, 1950, and on March 9, 1951, while employed as a roughneck for the defendant drilling company. His petition alleges that he was paid compensation at the rate of $30 per week for a period of four weeks following the first accident and that, after returning to work for Gracey, he received fifteen weeks' additional compensation for the second accident. He prayed for judgment against defendants for 381 weeks' compensation.

Defendants denied liability in their answer and also filed an exception of non-joinder on the ground that plaintiff's alleged

disability was due to a·subsequent accident which happened on July 13, 1951, while he was employed by Stokes Deep Water Well Works, whose compensation carrier was Coal Operators Casualty Company. Plaintiff then filed a supplemental and amended petition impleading Stokes and its insurer as defendants, alleging permanent disability as the result of the three accidents.

After a trial on the merits, judgment was rendered for plaintiff and against defendants, in solido, for compensation at the rate of $30 per week for 400 weeks, subject to a credit of 19 weeks previously paid by the Employers Company, together with medical expenses not in excess of $500. Both defendants appealed to the Court of Appeal for the First Circuit, which reversed the judgment as to Gracey and its insurer and amended it as to Stokes and its insurer by reducing the term of the $30 per week compensation award to fourteen weeks from July 13, 1951, the period of actual disability following the last accident. See 70 So.2d 713. The case has reached this court on a writ of certiorari and review issued on plaintiff's application.

The record discloses that plaintiff suffers from a congenital defect known as spondylolisthesis, a condition which one of the doctors at the trial defined as a "slipping of the spine between various segments".[1]

1. Spondylolisthesis is defined in Dorland, "The American Illustrated Medical Dictionary" 22nd Ed. as "Forward displacement of one vertebrae over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar, over the fifth".

The main issues in the case are whether plaintiff is totally and permanently disabled on account of the congenital condition and, if so, the extent to which this disability has been aggravated by one or more of the three accidents sued upon.

The history of plaintiff's injuries extends from 1943 to June of 1952 and discloses eight temporary disabling injuries to the lower part of his back, all the result of lifting. Defendants' liability is largely a question of fact to be answered on the basis of the expert testimony adduced at the trial by three doctors who had examined plaintiff at various times in connection with his accidents.

Dr. J. E. McClellan, plaintiff's personal physician, and Dr. James Gilly, a specialist in orthopedics, both testified that plaintiff fully recovered and was able to return to work after each episode of back pain but they further stated that, because of the three injuries sued upon, plaintiff was more susceptible to back strain. Defendants' witness, Dr. Daniel Kingsley, an orthopedist, disagreed with these assertions because, as admitted by Dr. Gilly, there was no change in plaintiff's physical condition before and after the accidents.

The theory of plaintiff's case is that the three back injuries involved herein aggravated the condition know as spondylolisthesis to such an extent that he can no longer perform work of a reasonable character, i. e., the heavy manual labor required of a roughneck engaged in drilling operations. The trial judge felt that this claim had been established by the opinions of Drs. McClellan and Gilly, which he found to be supported by the circumstance that plaintiff's numerous back injuries had occurred at shorter intervals and with less strain following the first Gracey accident on November 6, 1950.

The Court of Appeal, in reversing the judgment, stated that the only conflict in the medical evidence was whether or not plaintiff suffered more disability in his back at the time of the trial from the multiple accidents he had experienced than he did prior to the time of the first accident for which compensation is claimed. And, following a comprehensive discussion of this evidence, the court concluded that:

"  *   *   *  The only difference between the evidence of Dr. Gilly and Dr. Kingsley, as we analyze their testimony, is that Dr. Gilly states that the functional capacity of the back has been impaired in spite of no anatomical changes in the bony structure, ligaments or musculature, whereas the evidence of Dr. Kingsley is that there is no decrease in the functional capacity of plaintiff's back because there has been no change in the bony skeletal, ligaments or musculature; that whatever disability the plaintiff suffered by reason of these three accidents was only of a temporary nature. The reasons assigned by Dr. Kingsley appear

to us to be sound when viewed in the light of plaintiff's own testimony that it takes him from six to eight weeks to recover from one of these lumbosacral strains and that he is then all right until he experiences another strain. This fact is further supported by plaintiff's work record and his medical experts and their findings and reports until after Dr. Gilly discovered the spondylolisthesis in September, 1951, and which would have been discovered sooner if proper X-rays had been made.

"When we view this testimony and consider it along with plaintiff's own testimony and with that of his own physicians, Drs. McClellan and Gilly, who on the previous occasions certified that he was physically able to return and do the same work, there is but one conclusion that can be reached under these facts, and that is that the three injuries upon which this claim is predicated are no different from any of the other back sprains he has incurred and from which he recovered shortly and for which he collected some compensation." See 70 So.2d at pages 720, 721.

An examination of the record fully sustains the view expressed by the Court of Appeal. Indeed, a consideration of the facts of the case manifests that plaintiff has not suffered any residual disability whatever from any of the accidents herein involved—for even his own doctors admitted that, after he had recovered from each back strain, his physical condition had not been impaired. This being so, there is no basis for the claim that plaintiff is totally and permanently disabled by reason of these accidents. The most that can be said is that, due to the congenital defect in his back, plaintiff is prone to sustain injury easily when performing heavy manual labor. The fact that it is shown that these accidents (eight in number at the time of the trial) have occurred at shorter intervals during his most recent employments, furnishes no predicate for a conclusion that the later accidents have aggravated the congenital condition. To so hold, in the absence of proof of deterioration of bone structure, ligaments or musculature, would be pure speculation.

The judgment of the Court of Appeal is affirmed.

HAWTHORNE, J., absent.