REGAN, Judge.
Plaintiff, Jack Gardner, instituted this suit against the defendants, Lane Wells Company, his former employer, and its compensation insurer, The Travelers Indemnity Company, endeavoring to recover compensation at the rate of $30 per week for 400 weeks and medical expenses, insisting that he was totally and permanently disabled as the result of a back injury he incurred while handling a perforator gun. He further requested the imposition of statutory penalties and attorney’s fees.
Defendants answered and admitted the occurrence of the accident but denied that plaintiff was totally and permanently disabled as a result thereof, and asserted that both compensation and medical expenses had been paid by them until the plaintiff had fully recovered from his injury.
From a judgment in favor of defendants dismissing plaintiff’s suit, he has prosecuted this appeal.
An examination of the record initially discloses the absence of plaintiff’s testimony. The record principally consists of the depositions of four physicians, which, as paradoxical as it may appear, both litigants rely on in this court. We were informed in the course of oral argument by respective counsel that while plaintiff did testify in the lower court, no stenographer was present to transcribe it, which explains the absence thereof. However, that explanation fails to alleviate our intense interest in examining and then evaluating the plaintiff’s testimony, especially when liability for the injury is contingent, even to a slight degree, upon the validity of the claimant’s subjective complaints of total and permanent disability.
In any event, the fact that an accident occurred, in which plaintiff’s back was injured on February 10, 1956 at 3:30 a. m. while handling a perforator gun, is undisputed.
*630 Plaintiff incurred, as a result of the foregoing accident, a lumbo-sacral sprain or strain, which necessitated hospitalization for one month and treatment thereof for six months before he was discharged.
The medical history reveals that plaintiff had no complaints of back injury prior to the accident; he was employed to do heavy manual labor before he was injured and he has never resumed employment of this kind since the accident.
The depositions of four physicians were offered in evidence, namely, Drs. Jack Gani, a general practitioner and Hammond Newman, a specialist in orthopedics, both of whom testified on behalf of the plaintiff; and Drs. James Gilly and H. R. Soboloff, specialists in orthopedics, who testified on behalf of the defendants.
The four physicians agree that plaintiff has a congenital back defect, which they believe made it inadvisable for him to perform heavy manual labor; they also agree that had they examined him prior to his employment with Lane Wells Company, they would have advised him not to engage in that type of work.
Dr. Jack Gani, the general practitioner who initially treated plaintiff, stated that he has a congenital spondylolisthesis, which was aggravated by the severe trauma. Dr. Gani explained that “ * * * a person with spondylolisthesis is commonly referred to as a person wifh a weak back, that portion of the vertebrae is not attached to the sacrum securely”. While the injury to the muscles and ligaments was healed when plaintiff was discharged, Dr. Gani said that the functional capacity of the back probably was not the same. In his opinion plaintiff was incapable of returning to heavy labor because of the spondylolisthesis and the healed injury revealed a moderate amount of scar tissue. He explained that in this type of person, the tissues surrounding the abnormal vertebra supported it, and since the scar tissue replaced good tissue, his congenital condition was aggravated by the lumbo-sacral sprain in that it weakened the supporting tissue. Dr. Gani related that the plaintiff complained of pain when he lifted a 25 pound child, although he suffered no pain if he did not lift any heavy object.
Dr. Hammond Newman, an orthopedist, examined plaintiff on December 28, 1956, which was about four months after he was discharged as a patient, and found congenital spondylolisthesis of thé L-5 vertebra and a soft tissue condition in the area, which produced some nerve root findings, indicated by a depressed left ankle reflex. However, he then very pertinently testified that the congenital spondylolisthesis of the L-5 vertebra was not made worse or aggravated by the severe lumbo-sacral sprain incurred by plaintiff in February of 1956. Dr. Newman, in the last analysis, was of the opinion that plaintiff should never have engaged in heavy manual labor, and of course, this advice applied to the future as well.
Dr. James Gilly, an orthopedist who examined and treated the plaintiff between February 20, 1956 and the date of his discharge, August 3, 1956, testified on defendants’ behalf and asserted that this patient had recovered completely from the sprain by August 3rd and any weakness of the hack was referable to the congenital defect. He stated the functional capacity of the plaintiff’s back was the same upon discharge as it was prior to the injury. He, too, advised that plaintiff refrain from heavy work, otherwise recurring back injuries would occur from the congenital defect and not as a result of this sprain. However, he did concede that the strength of the ligaments in the sprain area was decreased, but he asserted that this was compensated by the surrounding musculature. Dr. Gilly said the injury did not aggravate the congenital defect. He disagreed with Dr. Gani’s opinion that the functional capacity was diminished because of lack of physical findings.
Dr. Byron Soboloff’s opinion of plaintiff’s condition was in accord with that of Dr. Gilly. Both doctors termed the con *631 genital defect spondylolysis, which is the vertebra weakness described by plaintiff’s physicians, but which does not encompass a slipping of the vertebra, as does spondy-lolisthesis. It was Dr. Soboloff’s opinion that if plaintiff could perform heavy labor before the accident, he was certainly able to do so now. This orthopedist examined plaintiff on October 27, 1956 and he complained of no pain and reflected no physical evidence indicative of residual disability. Dr. Soboloff agreed with Drs. Newman and Gilly that plaintiff’s congenital defect made it inadvisable for him to perform heavy labor. In the last anaylsis, he was sure that the scar tissue formed in the sprain area was not weaker than the pre-injury tissue.
Counsel contends that plaintiff’s injury resulting from this accident, aggravated a pre-existing congenital defect and thus disabled him from performing heavy manual labor. Plaintiff relies on the theory that scar tissue supplanting former healthy tissue in the area of injury weakened the support of plaintiff’s vertebra, thus aggravating or worsening his congenital condition.
Defendants, on the other hand, maintain that plaintiff’s claim for compensation is unfounded since he was restored to his former condition and there was no residual disability which resulted from the lumbo-sacral sprain. In substantiation thereof, they point to the medical evidence which they insist reveals that plaintiff’s congenital back rendered his performing heavy manual labor at any time inadvisable, and that his congenitally defective back was not aggravated by the accident.
Louisiana jurisprudence in this area is well settled to the effect that an employer accepts the workman as he hires him.[1] Thus, if a worker has a latent physical disability, activated during the scope of employment, the employer cannot avoid liability by establishing that an illness or disability was present at the time of employment. On the other hand, it is also well settled that disability resulting from an employee’s congenital condition is compen-sable only when the injury, incurred during the course of his employment, aggravated the defect.[2]
The foregoing résumé of the medical testimony reveals that only a question of fact was posed for the trial court’s consideration. The judge thereof obviously concluded that the congenital defect which existed in plaintiff’s back was not aggravated by the accident.
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so unsupported by the medical evidence adduced herein so as to warrant a reversal by us.
An analysis of the depositions of Drs. Gilly, Newman and Soboloff reveals that the medical evidence preponderates in favor of the defendants which, of course, fully sustains the conclusion reached by the trial court. No useful purpose would be served by reiterating this evidence; suffice it to say that it has, in our opinion, established that plaintiff has not incurred any residual disability whatsoever as a result of this accident, for even his own orthopedic expert, Dr. Newman, and so did defendants’ Drs. Gilly and Soboloff, testify that after he had recovered from the back sprain, his physical condition was not impaired. Only Dr. Gani, a general practitioner, disagreed with their conclusion. This being so, there is no basis for the claim that plaintiff is totally and permanently disabled by virtue of this accident. The most that can be said is that, due to the congenital defect in his back, plaintiff *632 is prone to sustain this type of injury easily when performing heavy manual labor.
To rationalize otherwise, as was said by the organ of the Supreme Court in Brous-sard v. R. H. Gracey Drilling Company[3], in the absence of proof of deterioration of bone structure, ligaments or musculature, would be pure speculation.
Plaintiff alternatively contends that no compensation was paid to him after August 1, 1956, yet he was not discharged by his treating physician until August 26, 1956, and for this reason, the defendants should be cast for compensation for this period and in consequence thereof, statutory penalties should be imposed. We find no merit to this contention for the reason that the record discloses plaintiff was paid through August 3, 1956, which was the date that he was discharged without any residual disability resulting from the accident by Dr. Gilly, who was the orthopedist who treated him for the lumbo-sacral sprain.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Hammett v. Cities Service Refining Corp., La.App.1951. 50 So.2d 331; Ross v. General Construction Company, La.App.1951, 49 So.2d 56; Womack v. New Orleans Public Service, Inc., 1926, 5 La.App. 71.

. Chance v. American Mutual Liability Insurance Company, La.App.1957, 92 So.2d 493; Broussard v. R. H. Gracey Drilling Company, 1955, 227 La. 882, 80 So.2d 850; Broussard v. R. H. Gracey Drilling Company, La.App.1954, 70 So.2d 713, 721.

. 1955, 227 La. 882, 80 So.2d 850.