JONES, Judge.
This is a proceeding under the Workmen’s Compensation Act, LSA-R.S. 23 :- 1021 et seq., in which plaintiff in the lower *60 court sought an award for total and permanent disability. The District Court granted the relief prayed for by plaintiff and defendant has appealed.
There is no dispute between the parties that plaintiff was working for the defendant and had two accidents — one on September 26, 1958 and the 'other on August 5, 1959 — but there is a serious dispute as to the result of said accidents. It is the contention of plaintiff that the total disability from which he is suffering resulted from the injuries he received from the accidents which aggravated a pre-existing condition of spondylolysis. (According to the testimony of the medical expert, Dr. Smith, this is a defect in a portion of the bone which bridges the posterior portion of the spinal canal to the vertebral bodies or the anterior portion.) It is the contention of defendant that spondylolysis is congenital and the plaintiff suffered no injury from the accidents that aggravated the pre-existing condition. The facts further indisputedly show that the accidents plaintiff suffered were in the course and scope of his employment and that the business conducted by the employer was one of a hazardous nature.
The first accident, as shown by the testimony of the plaintiff, was on September 26, 1958, when he was engaged with seven other men in picking up a 12 inch pipe 40 feet in length. He testified that he-experienced considerable pain in his back and, upon instructions of the foreman, Mr. Jenkins, went to see Dr. C. S. Toler of Clinton, Louisiana, who gave him some pills and he returned to work three days later in spite of the fact that his back caused him a great deal of trouble. He continued to work in his original employment as a dredge boat operator until August 5, 1959, at which time he testified he experienced a second injury which was brought about as a result of his lifting a power cable buried in the ground and covered with sand. This accident happened at night and while the plaintiff stayed on the job for several hours, he did report it the next morning to the superintendent and was again referred to Dr. Toler. However, since Dr. Toler was not in his office, the plaintiff was then referred to a Dr. Jackson of Clinton, who, in turn, referred him to Dr. William E. Smith, an orthopedist in Baton Rouge. It was not until August 17th, however, that he reported to Dr. Smith for examination. After making the examination, which consisted of X-rays and the usual tests for low back injury, including the pelvic rocking test, Dr. Smith reached the conclusion that plaintiff was suffering from spon-dylolysis and was of the opinion that it was congenital, as shown by report made by him to the employer under date of August 21, 1959, a copy thereof having been introduced in evidence as well as the whole .report being transcribed in the record. After the second accident, plaintiff continued to work for the employer until September 24, 1959, doing the same type of work in which he was originally engaged and on the next day, or September 25th, the present suit was filed. Plaintiff, in explanation of why he continued to work both after the first and second accidents, stated that even though he was suffering from pain he had to work because he had three children whom he had to support.
The testimony of Dr. Smith was the only medical testimony offered at the trial. Insofar as Dr. Toler was concerned, it was stipulated that the plaintiff was treated by Dr. Toler on September 26, 1958 and was discharged by this doctor and returned to work on September 29, 1958. From the reading of the testimony, it is obvious that Dr. Smith was of the opinion that the condition from which plaintiff was-suffering, spondylolysis, was congenital and was not caused by trauma. We quote this doctor’s testimony:
“By the Court: Did you say that was congenital? (meaning the condition) A. Yes, sir. I said it was congenital. He also has a small defect in this portion — I’m pointing at the *61 spinal process at the first sacral vertebra. He had a small defect here which can readily be seen by X-ray, which I also feel is congenital.
“Q. As a matter of fact Doctor, what is the general or usual source or cause of the spondylolysis? Is it ordinarily caused — -Is it ordinarily a congenital condition, or is it ordinarily caused by trauma? A. It’s almost always congenital. It would take — To get this same situation — in other words, a fracture across this same portion of the bone, which I have indicated here, a person would have to sustain, what we call a very severe or forcible hyperextension injury to the lower portion of his back. In other words, he would almost have to fall from a height and strike this portion of his back and be thrown violently backwards in order to sustain a fracture across this same portion, and the X-rays which I have are not compatible with a fracture across this portion of the bone. More likely, it has been there for a ■ considerable length of time.
“Q. In other words, as I understand from your testimony, there was nothing in your findings to indicate that the condition which you have described as spondylolysis, was anything but a congenital condition? A. That condition alone, yes, sir. That’s correct.
“By the Court: Was that the sole trouble Doctor, or was that what was causing his pain when you gave him that exercise movement? What else caused his pain besides that? A. Well, I believe the cause of the pain that he was having during the manipulations that I put him through when I examined him was this unstable situation which this defect in his back causes. In other words, abnormal motion in •the back of a patient sho is suffering with this congenital defect, and it’s almost like a 2 x 4 that’s sawed in half or in two, if there’s abnormal motion, it doesn’t give sufficient strength to hold the back in its normal position. For this reason, there’s abnormal stresses and strains placed on the ligamentous or soft tissue supporting structures in the lower portion of the back. Do I make myself clear?
“By the Court: Yes.
By Mr. Matthews:
“Q. It’s your opinion that the spon-dylolysis was not attributable to> trauma in Mr. Hutchinson’s case? A. No, sir. It was congenital.
“Q. When you say that this spon-dylolysis is congenital, do you mean to infer that so far as you can determine, Mr. Hutchinson has had that condition all his life? A. Yes, sir.”'
Thus, it is obvious that the spondylolysis; from which this plaintiff was suffering was congenital and the District Court so found for on page 3 of the written reasons for judgment the District Judge stated:
“It is apparent, therefore, from the evidence that here we have a case where a man had a bad congenital back condition, but who, for a period of at least three or four years prior to the institution of this suit, did hard manual labor and a combination of hard' skilled and semi-skilled labor immediately preceding the two accident.”
However, the District Judge further concluded on page 4 of the reasons for judgment that:
“The final accident, it appears, so strained and affected his back and was of such a nature, and inherently so calculated to injure and disable and cause great pain and disability, even . to a man with a perfectly normal back,, according to Dr. Smith’s testimony,. that the Court is without any other alternative but to find plaintiff to be presently permanently totally disabled,. *62 and that his disability was occasioned by and arose out of and in the course and scope of his employment.”
The testimony of the doctor that the trial court was referring to was in answer to a hypothetical question propounded by counsel for the plaintiff (tr. 14 and 15):
“Q. Now Doctor, assuming for the purpose of this question, that the evidence shows to the satisfaction of Judge Overton, that Mr. Hutchinson, on the 5th day of August, 1959, was engaged with two other men in lifting a very heavy pipe — power cable— which was buried in the ground to some extent, and assuming that those are the facts, and assuming that the cable was so heavy that after Mr. Hutchinson was injured, it required a block and tackle, or some mechanical means to lift it up, would a strain of that nature on a back of the type that Mr. Hutchinson has, could that probably, with a reasonable degree of medical certainty, cause him great pain and disability? A. Yes, sir. I think it would. I think it would cause a person with a normal back great pain and disability.
“By Mr. Bennett: We tender the witness.
“By the Court: With a normal back did you say? A. The weight he has described lifting, I think you or I might feel it.”
In addition to the doctor, the only other testimony was that of the plaintiff to the effect that he had been working for the defendant company as a dredge boat operator for a period of approximately four years; that he was 25 years of age and that he had never suffered from his back prior to the accident on September 26, 1958; that he continued to work with pain for a period of llj/2 months, or until August 5, 1959, and even subsequent to August 5, 1959 for a period of approximately seven weeks, or until one day prior to the institution of this suit, because he had to in order to support his family. In explanation of why he quit, he stated that Dr. Smith told him he was not able to do the type work he was doing. Plaintiff has a good work record, as shown by his testimony, and this has not been denied by any witness.
We believe that a fair appraisal of Dr. Smith’s testimony is to the effect that the condition from which plaintiff is suffering is congenital and, as a matter of fact, this was so found by the District Judge. A further fair appraisal of this doctor’s testimony is to the effect that this congenital condition was not aggravated as a result of the accident but herein the District Judge disagrees with the doctor and holds, as shown by his written reasons, that even though the condition was congenital, it was aggravated by the accidents because the doctor testified that such an accident would cause pain and disability to a well man. We cannot agree with the conclusion reached by the trial judge in the case because the doctor was simply saying that a well man would suffer pain and disability from lifting such a heavy object but he specifically concluded that such lifting did not aggravate the spondylolysis which, in his opinion, was congenital. He gave substantial reasons for his conclusion, these being that the X-rays showed no fracture of the bony defect, and this would have .been necessary to have aggravated the condition, and it would have taken considerable force with the plaintiff’s body being pushed backward to have caused a fracture. The type of accidents occasioned plaintiff consisted of his picking up a pipe on one occasion and a cable on another and neither of these actions involved a violent pushing of the plaintiff’s body backward.
This case is controlled by the principles enunciated in the case of Broussard v. R. H. Gracey Drilling Company et al., 227 La. 882, 80 So.2d 850. There, the plaintiff was seeking to recover permanent and total disability as a result of suffering from a congenital defect known as spondy-lolisthesis (slipping of the spine between *63 various segments). The court stated at page 852 of 80 So.2d “the most that can be said is that, due to the congenital defect in his back, plaintiff is prone to sustain injury easily when performing heavy manual labor. The fact that it is shown that these accidents (eight in number at the time of the trial) have occurred at shorter intervals during his most recent employments, furnishes no predicate for a conclusion that the later accidents have aggravated the congenital condition. To so hold, in the absence of proof of deterioration of bone structure, ligaments or musculature, would be pure speculation.” In the above cited case, it was found that the disability plaintiff suffered by reason of the three accidents was of a temporary nature while in this case the condition from which the plaintiff is suffering is permanently disabling and congenital but there is no proof of the deterioration of the bone structure, ligaments or musculature resulting from the accident thereby aggravating said congenital condition. The only evidence on the point is that of Dr. Smith who says that the plaintiff has always had the condition. We are cognizant of the fact that the employer accepts the workman as he hires him and if the worker does have a latent physical disability which is aggravated during the course of his employment, the employer cannot avoid the payment of compensation. However, where the latent physical disability is present when the employee is hired and the evidence is overwhelming that it was not aggravated as a result of the accident, then the employee cannot recover. Gardner v. Lane Wells Co., La.App., 117 So.2d 629.
Since we are of the opinion that plaintiff has failed to establish by a fair preponderance of the evidence that the congenital condition from which he is suffering was aggravated by the accident causing him permanent and total disability, he cannot recover and the judgment of the District Court is reversed at plaintiff’s cost.
Judgment reversed.