YARRUT, Judge.
Plaintiff seeks to recover compensation for total and permanent disability for an injury suffered while working as a longshoreman. From a judgment awarding $35.00 per week for a period not to exceed 400 weeks, subject to a credit for payments already made, plus medical bill of $690, and court costs, defendant has taken this appeal.
There is no dispute that plaintiff was injured when a sack of corn fell against his right hip while he was loading a truck; *882 nor that he was entitled to compensation from June IS, 1959, the date of injury, to August 8, 19S9, which defendant paid.
The sole issue is whether a pre-existing disability, admittedly aggravated by the injury, continued after August 8, 1959, the date defendant contends plaintiff had recovered from the aggravation and was restored to his pre-existing physical condition.
Plaintiff had never been employed by defendant’s insured prior to the accident in question. On many occasions defendant sought such employment, but was refused by the employment foreman because plaintiff’s limp was too apparent, and disqualified him for such work. As strange as it may seem, the foreman testified he employed plaintiff on this occasion to fill a work gang he was “shaping up” that morning, because no other was available. An hour later plaintiff suffered the injury.
Plaintiff and his witnesses testified he was able to walk around immediately after the accident; that he walked to and from the office to obtain permission to go to the doctor (Dennis Rosenberg); that he was able to walk to and from the doctor’s office and, following examination and treatment, he left the physician’s office on foot, unaccompanied. Dr. Rosenberg’s examination revealed that the only symptom plaintiff experienced was pain on flexion of the right leg and hip. He found no external evidence of injury, no broken bones, no seriously pulled muscles, no extensive swelling, no diminution of movement to any great extent except the persistence of pain in flexion, and because of the advanced arthritic condition that existed in plaintiff’s right hip joint before the accident, he considered plaintiff had suffered the same pain and stiffness before the accident. Dr. Rosenberg treated him for contusion and bruise of the right hip.
Dr. George D. B. Berkett, orthopedic surgeon, found plaintiff had extensive osteoarthrosis of the hip joint, of long standing and which unquestionably existed before the accident of June 15, 1959. His diagnosis was a sprain of the hip, superimposed on the arthritic condition. Following treatment for the contusion and sprain, Dr. Berkett was firmly of the opinion that the effects of the injury had subsided, and that plaintiff’s right hip was returned to essentially the same condition as it was before the accident. Dr. Berkett did state osteoarthrosis could be in a dormant state, and one suffering therefrom might perform his usual duties without pain; but was of the opinion that the injury temporarily disabled plaintiff and that, once the effect of the relatively minor sprain had cleared, no permanent injury resulted.
Dr. Irvin Cahen, orthopedic surgeon, examined plaintiff February 23, 1960, some eight months after the injury. He was unable to find any injury whatsoever. Accepting the history of temporary disability caused by the accident, he was firm in his belief that any injury plaintiff sustained was cured when discharged by Drs. Rosenberg and Berkett in early August 1959; and that, at the time of such discharge plaintiff’s hip was in the same physical condition it was prior to the accident. Dr. Cahen was positive that the degree of degenerative arthrosis prior to the accident must necessarily have caused pain and stiffness; and that plaintiff was no more unfit for longshoreman work after the accident than he was before; and, if he was able to do longshoreman work prior thereto, he should be able to do such work after receiving treatment for the mild sprain to the hip joint, as there was no evidence of any advancement of the arthritic changes for seven months following the accident.
Dr. Blaise Salatich was the only orthopedist testifying for plaintiff. He described the degree of arthritis which existed before the accident as “marked and advanced” and admitted that the pre-existing arthritis probably was traumatic in origin, and that a comparison of X-rays, taken after the accident with those taken many months thereafter, showed no changes, nor *883 advancement of the pre-existing hip joint arthritis.
Dr. Salatich’s opinion is based solely on his observation that plaintiff had the capacity to do hard and continuous work before the accident; that he did not think plaintiff was having “too much trouble” before the accident with the hip, which was based on his assumption that plaintiff was able to perform hard, laborious and continuous work as a longshoreman prior to the accident.
The testimony discloses that, in 1958, plaintiff earned only $277.84, working as a longshoreman of a total of $1760.73 income for that year, or about 15% of the total.
Plaintiff presented several lay witnesses in an attempt to establish a good physical condition prior to the accident and extreme disability following the accident. We are not impressed with the testimony of these witnesses because they did not appear to be well-acquainted with plaintiff.
A general contractor, in behalf of plaintiff, testified that plaintiff was always dependable, a steady worker, and was employed by him as a clean-up man after construction. This was janitorial work, not comparable to that of a longshoreman.
No representative of two stevedoring companies, by whom plaintiff testified he was employed, were called on to testify.
In summation, plaintiff should recover only for the period he was disabled as the result of the aggravation of his pre-existing disability. Broussard v. R. H. Gracey Drilling Co., 227 La. 882, 80 So.2d 850; Thomas v. Aetna Casualty & Surety Co., LaApp., 135 So.2d 505; Gardner v. Lane Wells Company, LaApp., 117 So.2d 629; Kraemer v. Jahncke Services, La.App., 83 So.2d 916.
If still disabled, he could recover only if such disability prevented him from doing work of a substantially similar character. As a common laborer his employment as a longshoreman was only about 15% of his total common labor. Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1.
Considering all of the evidence, the eye-witness testimony of his foreman that, when employed, plaintiff was not physically able to work as a longshoreman; that plaintiff suffered from advanced arthritis before the accident; the admitted fact that X-rays over a long period of time, following the accident, showed no changes or progression of the arthritis; that the injury did not prevent plaintiff from walking around thereafter; and did not require hospitalization; that the arthritis of the right hip joint was caused by an antecedent trauma or injury; that plaintiff was only capable of earning the nominal sum of $277.84 as a longshoreman during the year preceding his accident; that he failed to call any riverfront fellow employee to corroborate his testimony that he was physically capable of working before June 15, 1959 without evidence of pain, is conclusive that plaintiff has not borne the burden of proving disability beyond the date compensation benefits were terminated.
See Malone, LOUISIANA WORKMEN’S COMPENSATION LAW & PRACTICE, p. 355, § 266; p. 309, § 254 and p. 334, § 275 (and authorities cited) regarding conflicting medical testimony, back injuries, and injuries sustained by common laborers.
Accordingly, the payment of compensation to plaintiff up to and through August 8, 1959, was a payment in full for the aggravation sustained on June 15, 1959. The allowance of $690.00 for medical expenses for services rendered by Dr. Salatich must be disallowed as these services were performed after August 8, 1959, and necessarily would have been for treatment of the preexisting condition.
Plaintiff brought this suit in forma pauperis under the provisions, then in *884 force, of LSA-R.S. 13:4525-4529, now governed by LSA-C.C.P. Arts. 5185-5188. Art. 5188 provides that, if judgment is rendered against a party litigating under these provisions, he shall be condemned to pay costs, notwithstanding the suit was brought in forma pauperis. However, LSA-C.C.P. Art. 2164 gives the appellate courts great latitude in assessing costs. In light of plaintiff’s status, it is deemed equitable to tax each party with his own costs, including expert’s fee.
Accordingly, the judgment appealed from is reversed insofar as it allows compensation beyond August 8, 1959, and allows medical expenses, expert’s fee and costs; but otherwise is affirmed; plaintiff and defendant each to pay his own costs.
Reversed in part; affirmed in part.