REGAN, Judge.
Plaintiff, Samuel Rosa, instituted this suit against the defendant, Travelers Insurance Company, the insurer of Delta Engineering Corporation, endeavoring to recover maximum compensation emanating from a permanently disabling back injury, incurred on February 27, 1960, while he and a co-worker were engaged in lifting a heavy length of pipe. Plaintiff asserted that this accident aggravated a pre-exist-ing spondylolysis, a congenital back defect, and in conclusion he requested the imposition of statutory penalties and attorney’s fees.
The defendant answered and admitted the injury; however, it averred that plaintiff’s congenital condition was not aggravated as a result thereof and that he had fully recovered therefrom on June 7, 1960.
From a judgment awarding plaintiff $35 per week for a period not to exceed 400 weeks, subject to a credit of $565 for compensation previously paid, the defendant has appealed.
Plaintiff was engaged as a common laborer for approximately nineteen years prior to this accident and possessed no history of back injuries. However, about five years before its occurrence, he injured his foot as the result of an industrial accident, recovered therefrom, and returned to heavy manual labor within three months.
*577 Then, on February 27, 1960, while performing the duties of a sandblaster, plaintiff, with the assistance of a helper, attempted to lift a thirty foot length of pipe, weighing about 250 pounds, and when he hoisted one end upon his shoulder, he experienced an acute back pain.
He informed the helper and the foreman of his injury and was thereafter sent to Dr. William G. Barrett of Buras, Louisiana, for treatment. Plaintiff testified that the physician prescribed medicine to alleviate the pain and placed him in a brace. He visited Dr. Barrett each day over a period of two or three weeks after the accident.
Plaintiff resided in St. Francisville, Louisiana; however he had been employed near Buras. He explained that since it required five hours each day to reach the doctor’s office, he requested that the company refer him to a physician who practiced nearer to his home. Thus, Dr. Richard Means, an orthopedist residing in Baton Rouge, became plaintiff’s physician. He treated plaintiff from March 18, 1960 through June 7, 1960, at which time he discharged him as able to return to his former employment.
In conformity with this doctor’s advice, plaintiff returned to Delta where he was told that there was no work available for him. Thereafter, plaintiff endeavored to find employment requiring little physical exertion; however, his lack of education militated against procuring a job compatible with his condition.
Plaintiff related that he was perfectly willing to follow Dr. Means’ advice and return to any job requiring heavy manual labor; however, several incidents occurred thereafter which convinced him that he was unfit to do so. Initially he experienced acute pain while attempting to lift a watermelon; in July of 1960 he experienced excruciating pain in his lower back when he tried to carry an air conditioning frame weighing approximately 35 pounds and, finally, he endeavored to earn income as a house painter but his physical condition did not even permit him to climb a ladder.
Since the accident of February 1960, plaintiff has experienced severe pains in his back intermittently, and he wears a corset or back brace to alleviate the agony.
Turning our attention to the disputed evidence, we notice that the only fact seriously contested is whether plaintiff’s spondylolysis was aggravated as a result of the accident which occurred on February 27, 1960. Of course, as expected, the medical testimony adduced in connection with this vital aspect of the case is conflicting.
Four orthopedists examined the plaintiff, two on his behalf and two on defendant’s behalf and they unanimously agreed that his congenital condition rendered him more susceptible to injury; therefore all would have advised him, had they known of his condition before the accident, to refrain from engaging in heavy labor.
Dr. Byron Unkauf, who appeared on plaintiff’s behalf, testified that he initially examined him on March 28, 1960 and concluded therefrom that plaintiff had possibly incurred a ruptured disc, together with spondylolysis. This diagnosis was predicated on objective findings and x-rays. He also examined plaintiff on June 17, 1960, approximately ten days after Dr. Means, the treating physician, had discharged him. At that time he still observed that the plaintiff had a limitation of movement and slight muscle spasm; however, he appeared to have improved. Dr. Unkauf said he encouraged plaintiff to try to return to his former occupation, only out of professional courtesy since his treating physician had advised this course of action; however, he was convinced that plaintiff would soon suffer a recurrence of his back complaints. Dr. Unkauf again examined plaintiff on July 18, 1960, shortly after the occurrence of the air conditioning incident, and also on August 1, 1960. Since he still suspected that plaintiff may have ruptured an intervertebral *578 disc, he ordered a myelogram performed, which was negative. The final examination which this orthopedist performed was on February 18, 1961 when he reiterated that plaintiff should not perform heavy manual labor, and then asserted that despite the fact that the myelogram was negative, he retained the opinion that there existed a strong possibility that plaintiff was afflicted with a ruptured disc. He further recommended a spinal fusion operation to relieve the condition caused by the spondylolysis. In conclusion, Dr. Unkauf emphatically stated that plaintiff’s industrial accident had aggravated his congenital back defect for the reason that he had performed heavy labor throughout his life with no previous history of back trouble and yet, after the accident, the slightest movement at times caused him pain.
Dr. Nick Accardo, who appeared on plaintiff’s behalf, examined him on January 16, 1961 and diagnosed his condition as a lumbosacral syndrome. He related that the plaintiff had spondylolisthesis, which comprehended a slippage of the vertebrae at the point where the spondylolysis was. He stated that plaintiff was incapable of performing heavy manual labor and was of the opinion that at this time it was not relevant for him to determine whether plaintiff’s congenital condition had been aggravated by the February 1960 accident because he .was totally incapacitated from work and still suffered from the lumbosacral strain. It appeared to us that the physician was primarily concerned with the present condition of plaintiff’s back and that questions relating to the legal implication of an aggravation of a pre-existing congenital back defect was of lesser importance.
Dr. Richard Means, one of plaintiff’s treating physicians, related that plaintiff had incurred a lumbosacral strain as a result of the industrial accident, from which he had completely recovered on June 7, 1960. He was of the opinion that there were no objective findings to support plaintiff’s complaint of pain and that the industrial accident did not aggravate the spondylolysis; however, on cross-examination, he indicated that he thought the injury did aggravate the congenital condition.
Dr. Hyman Soboloff examined plaintiff once and that occurred on October 28, 1960, at the defendant’s request and he was of the opinion that the spondylolysis had not been aggravated either by the industrial accident or the July lifting incident. He stated he found no objective symptoms to corroborate plaintiff’s complaint. However, he did concede that patients afflicted with spondylolysis experienced both periods of remission and exacerbation, and that during a period of remission the patient could be asymptomatic, whereas he would demonstrate objective symptoms during a period of exacerbation. He also conceded that plaintiff could have been in a remissive state when he conducted his examination.
Predicated on the foregoing medical testimony, the trial judge concluded that the industrial accident aggravated plaintiff’s congenital spondylolysis. In written reasons for judgment, he explained that he had discounted the testimony of both of defendant’s medical experts since Dr. Means’ testimony was contradictory, while Dr. Soboloff’s testimony contained the concession that he could have seen the plaintiff during a period when the injury was remissive.
Therefore, the only question this appeal has posed for our consideration is whether the plaintiff has established by a preponderance of the medical evidence that the industrial accident aggravated the congenital condition of his back.
Counsel for the defendant insists that the trial judge erred in concluding that plaintiff’s condition was aggravated since the plaintiff failed to establish deterioration of bone structure, ligaments or musculature. Counsel argues that in instances where the injured workman seeks recovery *579 in conformity with the assertion that a job-connected injury has aggravated a congenital spondylolysis, our courts have reasoned that plaintiff must actually establish deterioration. In support of this argument, he has referred us to the language used by the organ of the court in the case of Broussard v. R. H. Gracey Drilling Company,[1] wherein the judges rationalized thus:
“ * * * The fact that it is shown that these accidents (eight in number at the time of the trial) have occurred at shorter intervals during his most recent employments, furnishes no predicate for a conclusion that the later accidents have aggravated the congenital condition. To so hold, in the absence of proof of deterioration of bone structure, ligaments or musculature, would be pure speculation.”
We are unable to agree with counsel’s interpretation of the foregoing language, namely, that therein is established a criterion which we must apply to all cases wherein the plaintiff asserts that a spon-dylolysis was aggravated by injury incurred in the course of his employment. In the Broussard case, the claimant possessed a history of eight previous injuries, which, he testified, generally disabled him for several months before he could return to his former employment. Since there existed so many instances of injury, the court simply reasoned that the plaintiff had failed to prove that his latest injury was any more disabling than the first eight.
Defendant has cited two other cases [2] decided after Broussard, which, he insists, accept and apply the criterion counsel argues was established therein. We have reviewed these decisions and conclude that both cases turned upon an answer to the vexatious question of whether the plaintiff had established or failed to establish the aggravation of the pre-existing condition 'by a preponderance of the evidence.
In closing we feel compelled to remark that we were very impressed by the testimony of plaintiff’s medical experts and especially by the plaintiff’s own good work record of performing heavy manual labor without, complaint, which extended over a period of nineteen years.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. 227 La. 882, 80 So.2d 850, 852.

. Gardner v. Lane AVells Company, La.App., 117 So 2d 629; Hutchinson v. Holloway Gravel Company, La.App., 126 So.2d 59.