273 So.2d 594 (1973)
Albert MONISTERE
v.
LOUISIANA DEPARTMENT OF HOSPITALS and Hammond State School.
No. 9203.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
Allen H. Danielson, Jr., New Orleans, for appellant.
Leonard E. Yokum, Jr., Hammond, for appellees.
Before Landry, Tucker & Pickett.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
Defendants (Department) appeal from judgment awarding plaintiff (Appellee) recovery of maximum workmen's compensation benefits for total permanent disability resulting from alleged aggravation of a pre-existing congenital back condition. We reverse upon finding that Appellee has failed to establish continuation of accident related disability beyond the period during which compensation benefits were paid.
Appellee, a 47 year old laborer, was employed by the Department as a handyman. His duties consisted of operating lawn mowers, lifting heavy objects and performing general labor. Admittedly, Appellee's occupation was hazardous. On June 20, 1969, a Friday, while assisting two fellow employees in moving a piano with the aid of a dolly, plaintiff sustained a back strain. Appellee felt a "pull" in his back, but did not report the incident to his co-workers because he at first thought it was not serious. He ignored the pain and continued to *595 work until the end of the day. That night, however, Appellee's back began to hurt. That following Monday, Appellee consulted a Dr. Alessi, who prescribed medication and bed rest. Appellee was hospitalized for a considerable time, including ten days in traction. Appellee maintains that on the night of the accident, his wife informed his superior, Jewel Voiselle, of the accident. It is conceded that a report of the accident was not filed with Appellee's employer until August, 1969. Appellee has not resumed work since the accident.
Appellee was paid benefits in the amount of $45.00 weekly from the date of injury through November 11, 1969, a total of 17 weeks, aggregating $757.15.
In essence Appellee maintains he is unable to work; that he experiences back pain upon exertion; that he has a pulling in his neck, and that his legs have given him trouble since the accident in question. Appellee concedes that in 1955 he injured his back while loading some blocks on a truck. He stated that following this accident, he remained in bed a few days, and had worked thereafter without incident until subject accident occurred. Appellee testified he has not attempted to work since June 20, 1969, because he just knows he is unable to do the type of work he was engaged in at that time.
Appellee's ability to adequately perform the duties of his employment with the Department was corroborated by Jewel Voiselle, Appellee's Foreman, and Sam Annino, co-worker. These parties testified in substance that prior to June 20, 1969, Appellee performed all duties required of him ably and without complaint of pain. They further testified that Appellee's duties included stooping, bending, lifting and heavy labor.
Dr. Louis F. Matta, Orthopedic Surgeon, was the sole medical authority offered by Appellee to establish Appellee's alleged total and permanent disability. Appellee was first seen by Dr. Matta on August 9, 1969. Appellee related a history of low back pain radiating into the posterior aspect of both thighs, but of greater intensity on the right side. Since the accident of June 20, 1969, Appellee was unable to walk straight. Sitting or standing aggravated Appellee's pain which was relieved by lying down. Coughing or sneezing did not intensify the pain, and Appellee experienced no numbness or weakness in his lower extremities. Appellee related his injury occurred while helping lift a piano. A prior back injury sustained in 1955 was revealed by Appellee. In addition, Appellee related episodes prior to June, 1969, in which Appellee experienced "sudden catches" in his back and occasional incidents of falling down to his knees.
Dr. Matta's examination disclosed Appellee was not in acute distress. Marked curvature of the lumbosacral spine was noted, accompanied by convexity toward the left and apex at about L-4 vertebra. Moderate muscle spasm in the paraspinous lumbar musculatures was also observed. Appellee exhibited a range of back motion restricted to about 50% of normal in flexion and extension. No motor, sensory or deep tendon reflex changes of the lower extremities were discovered. Examination of X-rays taken by a hospital to which Appellee had been confined revealed no evidence of fractures, dislocations or subluxations. Curvature of the spine with apex at approximately L-3, and narrowing of lumbrosacral interspace with sclerotic changes over the anterior and superior surface of S-1 vertebra was observed. Dr. Matta found that the S-1 vertebra was transitional with an attempt at lumbarization. He explained that transitional meant that the S-1 vertebra was not part of either the sacrum or lumbar spine, but anomalously remained halfway between the two. Dr. Matta also noted that the condition of Appellee's back lends itself to arthritic changes. He was of the opinion that, based on his findings and Appellee's history, Appellee had a mechanically weak back due to congenital conditions. He also was of the opinion that Appellee could not continue his *596 present employment without experiencing pain, and that Appellee would have to modify his employment.
Appellee was seen by Dr. Matta for the second and last time on September 29, 1969. Minimal curvature of the lumbar spine was again noted. On this occasion Appellee could walk on tiptoe and on his heels with no evidence of weakness in the lower extremities. Appellee's iliac crest appeared level, meaning the curvature was compensation for thus allowing Appellee to walk in a straight position without twisting his pelvis. Range of Appellee's back motion was found to be within normal limits. Again Appellee exhibited no signs of motor, sensory or deep tendon reflex changes in the lower extremities. Straight leg raising tests (sitting and supine) produced pain in Appellee's lower back when the right leg was flexed at the hip to about 80 degrees. No evidence of sciatic nerve root irritation was found. Pelvic flexion tests proved negative. X-rays taken on this occasion showed no fractures, dislocations or subluxations. Curvature at the L-3-4 interspace and an attempt at lumbarization at S-1 sacral vertebra was again observed. Dr. Matta also detected suspicious evidence of osteoporatic changes (thinning of bone) throughout Appellee's lumbar spine. In Dr. Matta's opinion, Appellee had then regained his pre-injury status. In Dr. Matta's terminology, Appellee's residual symptomology was "mainly secondary to the presence of congenital anomalies such as a transitional and degenerative change in his lumbar spine." In addition, Dr. Matta testified: "My examination at that time definitely showed that he was vastly improved and showed me no significant evidence of injury upon which to base a disability rating." Dr. Matta was positive in the view that Appellee had completely recovered from the injuries sustained in the accident of June 20, 1969, and that Appellee's then condition was due entirely to a congenitally weak back condition which antedated the accident in question. Dr. Matta was also of the view that if Appellee continued to perform heavy work, Appellee would eventually suffer permanent injury to his back. Nevertheless, it was Dr. Matta's professional opinion that any pain Appellee is now experiencing is due to the degenerative conditions taking place in Appellee's back and is not a residual of the accident.
It is elementary that in a workmen's compensation case, as in any other litigation, the employee bears the burden of establishing the claimed disability.
It is also basic law that where disability is at issue in a suit for workmen's compensation benefits, the courts, in deciding the question, will be guided by the medical evidence in the record.
Applying these basic rules, we find the trial court's judgment manifestly erroneous in that it is contrary to the clear weight of the medical evidence adduced herein.
In numerous cases involving similar circumstances, it has been repeatedly held that so long as the employee is disabled from the aggravation of a pre-existing defect, he is entitled to compensation. However, where the aggravation ceases and the employee's continued disability, if any, results solely from the pre-existing defect, compensation is no longer due. See for example, Broussard v. R. H. Gracey Drilling Company, 227 La. 882, 80 So.2d 850. See also, Lott v. Southern Farm Bureau Casualty Insurance Co., La.App., 135 So.2d 502, and cases therein cited.
The lower court fixed the attorney's fees due Appellee's attorneys in the sum of 20% of the first $5,000.00, and 10% of the amount in excess thereof. In view of the conclusions herein reached, this portion of the judgment must be reversed.
It is ordered, adjudged and decreed that the judgment of the trial court awarding plaintiff, Albert Monistere, judgment against defendants, Louisiana Department of Hospitals and Hammond State School, recovery of workmen's compensation benefits *597 for total permanent disability at the rate of $45.00 weekly for 400 weeks, and fixing attorney's fees due plaintiff's attorneys, be and the same is hereby reversed and set aside, and judgment rendered herein in favor of said defendants, rejecting and dismissing plaintiff's demands with prejudice; all costs of these proceedings to be paid by plaintiff-appellee, Albert Monistere.
Reversed and rendered.