STOULIG, Judge,
dissenting.
I respectfully dissent.
Plaintiff, James D. Crawford, filed suit against his former employer, A1 Smith Plumbing & Heating Service, Inc., and its insurer, State Farm Fire & Casualty Company, to recover maximum workmen’s compensation benefits of $65 per week for a period of 500 weeks for a job-related accident that occurred on December 2, 1974 that left him totally and permanently disabled. In addition he sought penalties and attorney fees under R.S. 22:658 for the alleged arbitrary and capricious withholding of benefits.
After trial on the merits, the district court rendered judgment awarding plaintiff compensation benefits of $65 per week for 52 weeks, subject to a credit of $1,820 previously paid, and for medical expenses incurred to the date of the trial. Statutory penalties and attorney fees were denied. Plaintiff has appealed.
It is conceded that James Crawford, a roofer with 16 years’ experience, was in *65 jured during the course and scope of his employment. As he was lifting an 85-pound package of shingles, he felt something “pop and pull” in his back and he toppled backward to the roof’s surface. The shingles fell on his chest.
The issues before us are the extent of disability occasioned by this accident and whether benefits were arbitrarily withheld.
On December 9, 1974, plaintiff consulted his family doctor, Dr. Charles J. Ganucheau, a general practitioner, who noted marked muscle spasm in his cervical and lumbar spine. X rays indicated congenital anomalies in the neck and back skeletal structures. Dr. Ganucheau was of the opinion that the fall aggravated the congenital problems in the lumbar and cervical spine. He treated plaintiff with physical therapy and examined him periodically between this date and August 4, 1975 (83 office visits). Being of the opinion that plaintiff had received the maximum benefits of medical treatment, Dr. Ganucheau discharged him at that time with the admonition not to lift anything heavy in the future because of his weak back. This would prevent plaintiff’s returning to work as a roofer.
At the insurer’s request, plaintiff was examined by two orthopedists, Drs. George Byram and A. William Dunn. Their views conflicted. Dr. Dunn, who examined plaintiff on December 20, 1974, conceded the trauma aggravated a pre-existing congenital defect producing a painful spine condition that should have subsided in “a few days or at most a few weeks.” However, Dr. Byram, with whom I am more impressed, did not see plaintiff until February 20, 1975 — two and a half months after the accident — and he diagnosed the problem as acute cervical and lumbar strain.
At defendants’ request, Dr. Byram examined plaintiff intermittently during the next three months. On May 23, 1975, he suggested plaintiff might be able to resume work in a report to the insurer:
“He is still having neck and back pain, with generalized radiation into both legs. No upper arm radiation.
“On examination, he has full motion of the neck, with some discomfort. On examination of the lumbar spine, there is generalized tenderness. No sciatic tenderness. He has full range of motion. “He is being allowed to return to work on 6/1/75. He is to be rechecked here on a p. r. n. basis. I think he may continue to have some discomfort in his back on occasion, if he does any lifting. However, there is no significant lasting disability at this time.”
This report in itself might indicate plaintiff could resume his roofing duties and only occasionally experience discomfort in his back when he did lifting. However, Dr. Byram’s deposition established that as a result of this accident plaintiff is more susceptible to back injury now than he was prior to this incident. I quote his testimony:
“Q Had this man returned to work and was doing heavy lifting again, is there anything that would have made his back more susceptible to injury, going back a second time?
“A Well, I don’t think, it may have been perhaps slightly more susceptible than it was the first time because of the injury he sustained, but I think the changes were there, was still there and not changed or anything, maybe deteriorated a little more in the interval. The accident could have aggravated it to some degree, made him a little more susceptible, how much, I don’t know.”
As I understand his testimony, plaintiff, who had congenital lumbar and cervical spine anomalies making him more susceptible to injuries in these areas, sustained severe back and neck strain as the result of an accident he incurred on the job. When he reached maximum recovery from the trauma, he was not restored to his former condition. In fact he was more susceptible to injury after his accident than he was before. Dr. Byram admitted this. Dr. Ganucheau advised against engaging in any lifting activities. Both orthopedists felt *66 compelled to advise plaintiff as to precautions he should take before lifting.
Under Louisiana jurisprudence, an employer takes a workman as he finds him and if an accidental injury triggers a latent condition resulting in disability, then the employee is entitled to workmen’s compensation benefits. Griffin v. Kelly-Springfield Tire Company, 316 So.2d 529 (La.App. 2d Cir. 1975). Where the aggravation ceases, and the workmen’s disability continues solely because of the pre-injury condition, then compensation is due only as long as the aggravation resulting from the trauma persists. Monistere v. Louisiana Department of Hospitals, 273 So.2d 594 (La.App. 1st Cir. 1973).
In this case plaintiff has not been restored to his pre-injury condition. The trauma left its mark, and while the degree of increased susceptibility to new injury cannot be gauged, it is nonetheless a permanent condition inflicted by a job-related accident. It is undisputed that plaintiff has not worked since the occurrence of the accident. Accordingly the judgment should be amended to increase the award to maximum benefits for total and permanent disability.
Further, the award of compensation for 52 weeks baffles me. If limited benefits were due, the logical point to discontinue would have been May 23,1975 (Dr. Byram’s limited discharge date), rather than December 2, 1975 (anniversary date of accident).