649 So.2d 1197 (1995)
John R. FUSELIER, Plaintiff-Appellant,
v.
INTERNATIONAL MAINTENANCE CORP., Defendant-Appellee.
No. 94-792.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*1198 Randall Scott Iles, De Ridder, for John R. Fuselier.
James Ray Morris, Lake Charles, for Intern. Maintenance Corp.
Before WOODARD, DECUIR and PETERS, JJ.
PETERS, Judge.
This is a workers' compensation action in which the plaintiff, John Fuselier, seeks to recover benefits from his former employer, International Maintenance Corporation, as a result of a work-related accident which occurred on March 20, 1992. Fuselier claims to be temporarily and totally disabled as a result of his physical and mental injuries sustained in the accident. After trial the hearing officer rendered judgment in favor of the employer denying benefits, and the employee has appealed that judgment.

DISCUSSION OF RECORD
On March 20, 1992, John Fuselier was employed by International Maintenance Corporation as a general laborer on the clean-up crew and was working on one of his employer's construction sites. As a part of his duties he was required to clean up trash and sweep the construction site regularly. On the day of the accident, while sweeping the boiler room floor, he observed a two foot by two foot cement door and a steel cable lying on the floor. The concrete door was apparently leaning against something, and Fuselier noticed there was trash behind the door and under the cable. When he lifted the cable to sweep, the door began to fall toward him. He described what happened next as follows:

*1199 I tried to stand up to get out of the way of it, but by that time it had caught me. So I tried to catch something to help hold me up so where somebody could just lay it back where it was, or whatever, and thenbut before I could do that it had caught above my knees and it threw me in a sitting position with the door on top of my legs. And when I fell, my head just about come (sic) between by legs and jarred back up.
The facts are in dispute as to the weight of the door. Patrick Hebert, the safety supervisor at the construction site, estimated the door's weight to be approximately eighty pounds while Fuselier suggested it weighed three to four times that much. Regardless of its weight, the only visible manifestation of any injury to Fuselier was a slight bruise on his lower leg.
The accident occurred on a Thursday morning, and Fuselier was not scheduled to work again until the following Monday. According to his testimony he began experiencing pain in his lower back when he awoke Saturday morning after the accident. He testified his initial pain was so severe he was forced to walk with his torso completely bent at the waist. Shortly thereafter, he began to have a "tingling feeling" in his legs. Fuselier did return to work on Monday but remained in the first aid shack the entire day.
Dr. R.L. Sasser, a general practitioner employed by International Maintenance Corporation, examined the plaintiff for his complaints on March 30, 1992, and according to the medical records in evidence, diagnosed the injury as a cervical and lumbar sprain. He gave Fuselier an anti-inflammatory injection and prescribed medication. Dr. Sasser examined the plaintiff twice more, on April 2 and April 6, 1992. The doctor released Fuselier to return to work with restrictions, but because of continued complaints, referred him for further evaluation to Dr. James Perry, an orthopedic surgeon. According to the trial exhibits, Dr. Perry examined Fuselier on April 13, 1992, and also diagnosed a cervical and lumbar sprain. Dr. Perry recommended physical therapy, modalities, exercises, light duty, and medical follow-up.
Based on the conclusion of both physicians that he could perform light duty, Fuselier reported to the construction site daily. However, he performed no work and simply remained in the safety shack. In fact, he was not even required to walk the two hundred fifty yards from the construction site entrance to the safety shack each morning. Rather, Fuselier would report to the guard shack at the entrance, and someone on the construction site would drive to the guard shack, pick him up, and deliver him to the safety shack. This procedure was sanctioned by the work supervisors, and Fuselier was paid full wages for the time spent on the job location.
At trial Fuselier complained of having to wait on occasion at the guard shack all day for someone to pick him up. According to Fuselier, this prevented him from drawing a full paycheck each week. This assertion was contradicted by his supervisor, Warren Chapman, who testified that the longest Fuselier ever had to wait was forty-five minutes. Even then, according to Chapman, Fuselier was clocked in for pay purposes as if he had begun the shift on time. The only time Fuselier did not receive credit for a full day's work, according to Chapman, was when he left the job site early.
Fuselier testified that not only was he in pain while sitting in the safety shack, but his co-workers constantly ridiculed him. This activity on the part of the co-workers was specifically denied by the supervisors. In any event, in June of 1992, or less than three months after the accident, Fuselier concluded it was no longer beneficial for him to continue to show up for work. Therefore, he quit.
During the time he was reporting for light duty work, Fuselier continued to see Dr. Perry. The doctor had initially prescribed physical therapy, and after one week of sessions, Dr. Perry observed no objective clinical findings to justify Fuselier's complaints. The results of a cervical and lumbar MRI ordered by Dr. Perry and performed on April 22, 1992, were negative as to the cervical area. However, the test did reveal a "[b]ulging of the annulus at the L5-S1 level and to a lesser extent at the L4-L5 level without demonstration of disc herniation."
*1200 Dr. Perry's examination of May 5, 1992, was essentially normal although Fuselier complained that the physical therapy "hurts more than it helps." After his examination of Fuselier on May 12, 1992, Dr. Perry concluded that his patient "seems to be over-exaggerating his symptoms." Because of his lack of findings despite continued complaints, Dr. Perry sought a second opinion by referring Fuselier to Dr. Thomas R. Butaud, an Opelousas, Louisiana, orthopedic surgeon.
Dr. Butaud examined the plaintiff on June 2, 1992, and also concluded that Fuselier had sustained a lumbosacral strain. However, he was of the opinion that the complaints of numbness and continued pain were possibly related to Fuselier's "marked obesity." The record reflects that Fuselier is six foot two inches tall and weighs approximately two hundred and fifty pounds. Dr. Butaud recommended as follow-up measures, a bone scan, EMG's, and nerve conduction velocities of the lower extremities. He also recommended that the plaintiff be seen by a psychiatrist and a rehabilitation specialist.
Fuselier's attorney then referred his client to Dr. Dean Moore, a Lake Charles, Louisiana, neurosurgeon, who saw the plaintiff on July 20, 1992. It was Dr. Moore's opinion that Fuselier had initially sustained a cervical and lumbar strain, but the doctor further stated that, "at the present time, I am unable to detect any residuals of such injuries and believe that his symptoms, at this point in time, have a psychological basis." He also recommended that Fuselier seek psychiatric treatment.
Fuselier had already been examined by a psychiatrist prior to Dr. Moore's recommendation. On July 7, 1992, the plaintiff was seen by Dr. Harper F. Willis, a Lake Charles, Louisiana, physician, who is board certified in psychiatry. After interviewing the plaintiff, examining the previous medical records, and administering an MMPI examination, Dr. Willis concluded that Fuselier was suffering from an adjustment disorder with his physical complaints. In his report summary, the doctor made the following observation:
Patient appears to be heading towards a somatic pain disorder. He is not malingering and is under severe psychosocial stressors which obviously are adding to his problems. His clinical picture and MMPI indicate severe psychological problems and he is not without suicidal risks. Primarily the problem is one of chronic back pain. (Emphasis added).
Dr. Willis saw the plaintiff a second time on August 31, 1992, and found no change in his condition. His diagnosis was that of "a somatoform pain disorder and there is a severe overaction (sic) to a soft tissue injury, psychological in nature."
Dr. Rennie Culver, a Metairie, Louisiana, psychiatrist, evaluated the plaintiff at the request of the defendant. According to the medical report in the record, Dr. Culver's diagnosis was based on a review of the medical records of Drs. Moore, Willis, Bugg, Butaud, and Perry; a series of memoranda written by various employees of the company handling the workers' compensation claim for the employer; and an examination of the plaintiff which occurred on November 30, 1992. Dr. Culver also concluded the plaintiff was not a malingerer and was suffering from undifferentiated somatoform disorder. The report of Dr. Culver contains the following statement concerning causation and connexity to the plaintiff's physical injury:
This patient's psychological problems did not result from the work-related injury.... People do not develop emotional problems, minimal or otherwise, as the result of soft tissue injury. This man is looking for something to blame in the environment for his chronic maladjustment. He is having a very abnormal reaction to a trivial event and is acting out his dependency needs in the context of these exaggerated, non-organic complaints of one kind or another and in the context of the legal claim. (Emphasis added).
Dr. Culver also suggested that Fuselier avoid any further medical treatment "as such is only going to reinforce his beliefs that he has a true, organic problem." Although the doctor did not specifically make a finding as to whether or not the plaintiff could return to work, Dr. Culver did state that those persons in Fuselier's surrounding environment should be discouraged from reinforcing his symptoms *1201 as this in turn would also reinforce the plaintiff's belief in his pain. Therefore, according to Dr. Culver, allowing the plaintiff to remain unemployed would tend to maintain his belief in his injury.
International Maintenance Corporation discontinued compensation payments to Fuselier on January 5, 1993. Fuselier subsequently filed suit alleging entitlement to temporary total disability payments and seeking penalties and attorney fees for the arbitrary and capricious action of the employer in discontinuing benefits. In the proceedings below, the hearing officer rendered judgment in favor of the employer, finding the plaintiff failed to meet his burden of proof in establishing he was continuously disabled and entitled to temporary total disability benefits. The plaintiff appeals this decision.

ANALYSIS
In order for a claimant to recover benefits under the workers' compensation statute, he must prove that he has suffered a personal injury as a result of a work-related accident and that the injury has rendered him either temporarily totally disabled, permanently totally disabled, and/or permanently partially disabled, or entitled to supplemental earnings benefits. La.R.S. 23:1021, 1221; Alfred v. Mid-South Machine, Inc., 594 So.2d 937 (La.App. 3d Cir.1992).
In this case, the medical evidence is clear, and Fuselier does not dispute, that the initial cervical and lumbar strain suffered in the accident is no longer disabling. Instead, Fuselier contends he has suffered a mental injury caused by a work-related physical injury which has resulted in a disability preventing him from engaging in any gainful employment.
The first step in determining the issue of Fuselier's entitlement to workers' compensation benefits is to determine whether or not he has suffered an injury that is compensable under the workers' compensation statute. In the proceedings below, the hearing officer failed to address whether or not the claimant had established his burden of proving that he had suffered a mental injury as a result of a physical injury. Therefore, we address this issue de novo.
Louisiana Revised Statutes 23:1021(7)(c) provides:
A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

(Emphasis added).
Both Dr. Culver and Dr. Willis were aware that Fuselier had a history of extreme depression. In fact, after sustaining a previous on-the-job knee injury while working for another employer, Fuselier had become so depressed he attempted suicide. Dr. Culver and Dr. Willis also agreed that the plaintiff is suffering from a somatic pain disorder which causes him to believe he is suffering from a physical injury when in fact he is healthy. However, the doctors do not agree as to causation.
In Dr. Willis' opinion, the accident of March 20, 1992, was the "triggering event" for the onset of the disorder, but he could not unequivocally state that the disorder would not have manifested itself without the accident. As he testified in his deposition:
Q: Assumingor given John Fuselier's possible mental condition before the accident, do you think it would be likely that if he had not had the March 20 accident his mental condition would have developed and interfered with his work as it did?
A: You know, that's very difficult to answer. That's (sic) is supposing a lot of things but supposing that he didn't have any accident and he may well have just continued as he was, you know, without any kind of problem, you know. Then again, you know, obviously he has a background, you know, of physical abuse. He has dependent type of personality and a very poor educational type background so he would be very susceptible, you know, I think to this kind of disorder....
On the other hand, Dr. Culver concluded that it is not possible for a somatic pain disorder to develop from a mere soft tissue *1202 injury such as that sustained by the plaintiff. It was Dr. Culver's opinion that, based on Fuselier's history, his somatic pain disorder was already in existence prior to the accident of March 20, 1992.
Louisiana Revised Statutes 23:1021(7)(c) requires that the claimant establish that his mental injury was as a result of his work-related physical injury by clear and convincing evidence. Lannes v. Jefferson Door Company, 638 So.2d 250 (La.App. 5th Cir. 1994). "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." Id. at 251. Because of Dr. Willis' equivocal testimony, we find that the plaintiff has failed to establish by clear and convincing evidence that he has suffered a mental injury caused by a work-related physical injury.
Additionally, the hearing officer indicated in her reasons for judgment that the testimony of Dr. Culver rather than that of Dr. Willis would be accepted by the court on the issue of causation. As such,
[a] Court of Appeal may not set aside a trial court's or jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

Alfred v. Mid-South Machine, Inc., supra at 939, citing Rosell v. ESCO, 549 So.2d 840 (La.1989).
In this case, we do not find that the hearing officer was manifestly erroneous in accepting the testimony of Dr. Culver.
Finding that the plaintiff's mental condition existed prior to the March 20, 1992 accident, we must now address his argument that the accident caused an aggravation of a preexisting mental condition which has disabled him such that he is entitled to workers' compensation benefits. In Frederick v. Town of Arnaudville, 572 So.2d 316 (La.App. 3d Cir.1990), writ denied, 575 So.2d 373 (La. 1991), we recognized that an employee is entitled to workers' compensation benefits for the aggravation of a preexisting mental disorder. However, an employee is entitled to compensation only as long as the aggravation continues. Lott v. Southern Farm Bureau Casualty Insurance Co., 135 So.2d 502 (La.App.2d Cir.1961). If the employee should recover to his former condition, he is no longer entitled to compensation. As this court has previously held:
[I]t has been repeatedly held that so long as the employee is disabled from the aggravation of a pre-existing defect, he is entitled to compensation. However, where the aggravation ceases and the employee's continued disability, if any, results solely from the pre-existing defect, compensation is no longer due.

Bates v. City of Crowley, 613 So.2d 1107, 1112 (La.App. 3d Cir.), writ denied, 619 So.2d 545 (La.1993).
In this case, the hearing officer found that "any aggravation to claimant's pre-existing mental condition or to his physical condition was resolved at the time indemnity benefits were terminated. Any residual disability is the result of a pre-existing condition for which the defendant is not responsible." All the doctors who treated Fuselier, including Dr. Willis, recommended that he receive no further medical treatment as it was unnecessary and potentially harmful. Additionally, every doctor except Dr. Willis recommended that Fuselier return to light duty work. Based on this information, International Maintenance Corporation discontinued its payments to the plaintiff. The hearing officer found that at the time the employer discontinued payments, the plaintiff's condition had resolved itself and that no further compensation was required.
Factual findings regarding the existence, causation, and duration of disability are entitled to great weight and should not be disturbed on appeal absent manifest error. Lannes, supra. We do not conclude the hearing officer's decision was manifestly erroneous. Therefore, we affirm the decision of the hearing officer in all respects.
*1203 The costs of these proceedings are assessed against the plaintiff.
AFFIRMED.