718 So.2d 404 (1998)
Rudolph A. MARTIN
v.
OLSTEN INDUSTRIAL SERVICES.
No. 98-C-0463.
Supreme Court of Louisiana.
September 18, 1998.
Kristi Lynn Stroebel, Metairie, Egan, Johnson, Stiltner & Patterson, for Applicant.
Michael B. Forbes, Hammond, for Respondent.
PER CURIAM.[*]
We granted certiorari in this worker's compensation case to determine whether the hearing officer's finding that the claimant suffered a work-related injury entitling him to benefits is supported by the record. After a review of the record, we conclude the hearing officer's ruling is clearly wrong, and therefore reverse the judgment of the court of appeal affirming the hearing officer's ruling.

FACTS AND PROCEDURAL HISTORY
This case arises from a claim for worker's compensation benefits filed on May 20, 1996 by claimant, Rudolph Martin, against his employer, Olsten Industrial Services ("Olsten"), for an injury that allegedly occurred while he was assigned to Paducah Rigging. Claimant asserted that his injury occurred when a metal wire punctured his right big toe, which ultimately resulted in infection and amputation of his toe. Olsten filed an answer and general denial to the claim.
Subsequently, a hearing was conducted before a hearing officer of the Office of Worker's Compensation. Claimant testified at the hearing that on or about March 18, 1996, he was working on a rig "burning out" short pieces of metal wire, approximately six to ten inches long, from metal cable sockets in order to reuse the sockets. After he finished work and was preparing to go home, he noticed blood on his right sock and discovered a puncture wound on the big toe of his right foot.[1] He showed his foot to a coworker, Gene Plaisance, and told Mr. Plaisance, "Gene, I stuck something in my foot." Claimant then used pliers to pull the metal from his shoe, cleaned and bandaged the wound, put on his tennis shoes, and went home for the evening.
*405 Claimant testified he continued to work without complaint for the next several weeks, and it appeared that the puncture wound on his toe healed. On Friday, April 5, 1996, he began to feel chilled and feverish; however, he testified he did not believe these symptoms were related to the injury to his foot. His condition progressively worsened over the weekend. When he reported to work on Monday, April 8, 1996, Paducah's operations manager, Yancey Jacob, instructed him to go to Charity Hospital. On Tuesday, April 9, 1996, claimant testified he was admitted to Charity Hospital. At the time of his admission, claimant's toe and right leg were swollen, but he did not mention his puncture wound to hospital personnel, because he did not believe it was related to this condition. Ten days later, on April 19, 1996, doctors were forced to amputate claimant's right great toe.
On cross examination, Olsten introduced claimant's hospital records including the nurses' notes entered at 7:30 a.m. on April 10, 1996, which indicated that claimant "stated to night nurse that he went fishing a few days ago & stuck an object in his foot," and a consult report dated April 12, 1996, which noted an infected area on claimant's right great toe with "hx [history] of f.b. [foreign body] while on fishing trip." Claimant denied telling the nurse his foot was injured while fishing, although he testified he mentioned to the nurses that he enjoyed fishing. He further asserted that if he had made such a statement it was because he was under the influence of narcotic pain medication.[2]
Olsten also presented the testimony of Gene Plaisance, the co-worker to whom claimant had allegedly reported the injury. Mr. Plaisance testified that claimant did not report a work-related injury to him. In fact, Mr. Plaisance testified that it was not until after claimant was out of the hospital that he became aware that he was claiming that he had been injured in a work-related accident. Mr. Plaisance stated that if claimant had told him about the injury, he would have sent him to see their supervisor, Yancey Jacob, and then he himself would have "followed up" with Jacob regarding the injury. Additionally, Mr. Plaisance testified that in the ten years he had been employed at Paducah Rigging, he had never known of an employee's work boot to be punctured by metal.
Olsten then presented the deposition testimony of Yancey Jacob, the operations manager at Paducah Rigging, who indicated claimant did not report a work-related injury to him until some six to seven weeks after he sent claimant home from work on April 8. Mr. Jacob stated that he spoke to claimant on the telephone while he was in the hospital. Claimant advised him he was suffering from a kidney infection, but did not mention anything about a work-related injury. According to Mr. Jacob, the first time claimant told him he was injured on the job was when he came by the job site on crutches after he had been released from the hospital.
Finally, Olsten presented the deposition testimony of Raymond LeBlanc, another of claimant's co-workers. Mr. LeBlanc stated that he did not witness claimant's accident, nor had claimant reported the accident to him after it happened. Mr. LeBlanc testified that it wasn't until after claimant was out of the hospital that he became aware that he alleged that he had been injured in a workrelated accident.
At the conclusion of the hearing, the hearing officer rendered judgment in favor of claimant and against defendant, finding that claimant sustained a work-related injury resulting in temporary and total disability. The hearing officer awarded claimant worker's compensation benefits of $200.10 per week, in addition to medical benefits and costs, to continue until such time as claimant "is physically able to engage in gainful employment."
Olsten appealed. The court of appeal, in an opinion not designated for publication, affirmed the hearing officer's ruling, with one judge dissenting.[3] Upon Olsten's application, *406 we granted certiorari to consider the correctness of this ruling.[4]

DISCUSSION
It is well settled that the factual findings of a worker's compensation hearing officer may not be set aside unless those findings are clearly wrong in light of the record reviewed in its entirety. Alexander v. Pellerin Marble, 93-1698 (La.1/14/94), 630 So.2d 706. Therefore, the narrow issue before us is whether the record supports the hearing officer's conclusion that claimant met his burden of proving that his injury arose in the course of his employment.
In Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 361 (La.1992), we explained the employee's burden of proof as follows:
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker's burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson [v. Roadway Express, Inc., 588 So.2d 350 (La.1991)]. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.

Turning to the facts of the instant case, the record reveals that the only support for claimant's contention that the accident was work related came from his own testimony, in which he stated he found a piece of metal in his shoe as he was changing after work. However, the employer presented medical records in which claimant's own statements tended to discredit this testimony. These records indicated claimant told medical personnel, on two separate occasions, that his foot was injured while fishing. While claimant attempted to explain away these statements on the ground he was under medication at the time, the records indicate that claimant did not receive any narcotic medication until April 13, 1996, after the statements were made.[5]
Likewise, the record is devoid of any evidence corroborating claimant's assertion that the injury was work related. Although claimant testified that he showed his foot to his co-worker, Gene Plaisance, shortly after he discovered the injury, Mr. Plaisance testified unequivocally that claimant did not tell him about any work-related injury until after claimant was released from the hospital.[6]
Two other individuals who were present at the time of the accident also failed to corroborate claimant's allegation that the injury was work related. Claimant's co-worker, Raymond LeBlanc, and claimant's supervisor, Yancey Jacob, testified they did not learn claimant was asserting he had a workrelated *407 accident until he emerged from the hospital.
In sum, based on the record before us, we conclude that claimant has failed to prove by a preponderance of the evidence that his injury resulted from a work-related accident. The hearing officer's ruling is clearly wrong, and the court of appeal erred in affirming that ruling. Accordingly, we must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. Judgment is entered in favor of defendant, Olsten Industrial Services, dismissing the claim of Rudolph A. Martin against it at claimant's cost.
NOTES
[*] Johnson, J. not on panel. Rule IV, Part 2, § 3.
[1] Claimant, a diabetic, testified he has diminished sensation in his extremities.
[2] The nurses' notes, doctors' notes, and medication administration records indicate that claimant did not receive narcotic pain medication until April 13, when he was given Demerol and Phenergan. Prior to that date, the strongest medication claimant received was Tylenol.
[3] 97-845 (La.App. 5th Cir.1/27/98) (unpublished).
[4] 98-0463 (La.4/9/98), 717 So.2d 1135.
[5] In her reasons for judgment, the hearing officer relied on the hospital's Department of Social Services Initial Screening Report, dated April 9, 1996, which indicates that the "patient was `hurt on his job' and has drew [sic] all of his compensation." However, it is unclear whether this statement referred to the accident at issue in the instant case, since claimant clearly had not received any compensation benefits at the time the statement was made. Olsten suggests this statement may have referred to the worker's compensation claim for back injuries which claimant settled against a previous employer several years old.
[6] On cross examination. Mr. Plaisance specifically denied that he could have forgotten about the incident:

Q. Is it possible that you might have forgotten that Mr. Martin told you about a relatively minor injury while he was on the job there?
A. I would have remembered that and anything in that respect because I would have told him to go see Yancey, and I would follow-up with Yancey. Because every time someone come [sic] to me I follow up with Yancey and make sure it's done.