720 So.2d 107 (1998)
David MOSS, Plaintiff-Appellee,
v.
WINWARD HOSPITAL, Defendant-Appellant.
No. 98-401.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
*108 Susan Ford Fiser, Alexandria, for David Moss.
Charles J. Foret, Lafayette, for Winward Hosp.
Before YELVERTON, PETERS and AMY, JJ.
AMY, Judge.
In this workers' compensation matter, the lower court concluded that the claimant's Charcot foot condition was a work-related accident which aggravated a pre-existing diabetic condition. As a result, the claimant was awarded temporary total disability and medical benefits. The defendant appeals. For the reasons which follow, we affirm in part and reverse in part.

Factual and Procedural History
The claimant in this matter, David Moss, alleges that while in the course and scope of his employment as a maintenance worker with the defendant, Winward Hospital, he sustained a condition known as Charcot foot. He maintains that this condition arose in July 1996 when he and his supervisor, *109 Charles Humphries, were moving hospital beds. He asserts that his foot began to immediately swell, that he told Humphries of the injury and that, at the time, he felt that he had only sustained a sprain. On the day following the alleged accident, the claimant stayed at home because of the swollen foot but returned to work later in the week. Following a few additional days of working, the claimant reported to the Veterans Administration Hospital in Pineville, Louisiana.
Moss testified that, after the August 2, 1996 visit to the VA hospital, he was given medication and released. He then returned to work. However, a blister developed on his foot and prompted the claimant's return to the hospital. He was admitted on this visit and was diagnosed as having a condition known as Charcot foot. The claimant's treating podiatrist, Dr. Robert Butler, explained that this condition occurs in people who have lost sensation in their feet, in particular, those who have lost sensation due to diabetes. He testified in deposition that after sensation is lost, the patient can overuse the foot to a point where the physiology changes and the bones break. Dr. Butler stated that, in the claimant's case, the bones in his foot broke at the Lisfranc's Joint. Dr. Butler further opined that the claimant's condition is permanent and will prevent a return to work.
After both disability and medical benefits were refused by the defendant, the claimant filed a Disputed Claim for Compensation on February 7, 1997. He asserted that he was entitled not only to benefits, but to attorney's fees and penalties as well. Winward answered the claim and asserted that Moss is precluded from benefits due to violation of La.R.S. 23:1208 and La.R.S. 23:1208.1. The defendant argued that the claimant knew that he was diabetic at the time he was hired, that he withheld this information, and that, further, he made false statements regarding his injury in order to receive workers' compensation benefits. Following a hearing on the matter, the workers' compensation judge found in Moss' favor awarding temporary total disability benefits and medical benefits "including but not limited to treatment for Charcot foot and diabetes." However, the judge found that imposition of attorney's fees and penalties was not warranted. Furthermore, the workers' compensation judge found that the employee did not violate La.R.S. 23:1208 nor La.R.S. 23:1208.1.
Winward appeals and assigns the following as error:
1. The Workers' Compensation Judge erred when she did not disqualify David Moss from receipt of workers' compensation benefits due to his violation of LSA R.S. 23:1208, the Workers' Compensation Act's fraud statute.
2. The Workers' Compensation Judge erred when she did not disqualify David Moss from receipt of workers' compensation benefits due to his violation of LSA-R.S. 23:1208.1, the Workers' Compensation Act's pre-existing disclosure provision.
3. The Workers' Compensation Judge erred in finding David Moss had proven he had sustained an accident within the course and scope and arising out of his employment with Winward Hospital.
4. The Workers' Compensation Judge erred when she held Winward Hospital was responsible for treatment of David Moss' pre-existing diabetic condition.

Discussion

La.R.S. 23:1208
In the first assignment of error, Winward argues that Moss made fraudulent statements regarding the alleged accident in order to receive workers' compensation benefits. Therefore, according to the defendant, La.R.S. 23:1208 precludes recovery of such benefits. Specifically, the defendant asserts that, contrary to the claimant's testimony, Charles Humphries stated that the claimant did not report to him that he injured his foot while moving the hospital beds. Furthermore, the defendant claims that the claimant never told hospital personnel that his injury was work-related until after learning that he had broken bones in his foot.
La.R.S. 23:1208 provides as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or *110 for any other person, to willfully make a false statement or representation.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation under this Chapter.
In interpreting this provision, the Louisiana Supreme Court has stated that:
The only requirements for disqualification under Section 1208 are: 1) a false statement or representation, 2) which is willfully made, and 3) which is made for the purpose of obtaining workers' compensation benefits. If these requirements are met, Section 1208 applies and its forfeiture provisions must be enforced.
Resweber v. Haroil Const. Co., 94-2708, p. 11 (La.9/5/95); 660 So.2d 7, 14. In application of La.R.S. 23:1208 and Resweber, a panel of this court stated that "[t]he statute and Resweber are intended to weed out those who prey on the compensation system through the use of lies and deceit." Sumner v. Lake Charles Marine, 96-280, p. 5 (La.App. 3 Cir. 6/5/96); 676 So.2d 653, 656, writ denied, 96-1772 (La.10/11/96); 680 So.2d 645.
In oral reasons for ruling in the present matter, the workers' compensation judge stated that the claimant was credible in his version of events and, furthermore, that "there was no intent to deceive either the employer or this Court in order to obtain workers' compensation benefits." When considering such factual determinations, the appellate court must review the matter under the manifest error or clearly wrong standard of review. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94); 630 So.2d 706.
Our review of the record reveals no manifest error in the lower court's determination that recovery is not precluded by La. R.S. 23:1208. We find no evidence which would compel a finding that the claimant made false statements in order to procure workers' compensation benefits. Instead, the claimant testified that, at the time of the alleged accident, he informed Charles Humphries that he thought that he had hurt his foot while moving the bed. While this statement conflicts with Humphries' denial of such a report, the workers' compensation judge found the claimant's testimony to be credible.
With regard to Moss' failure to tell medical personnel that his foot injury resulted from a work-related accident, Dr. Butler testified that it is not uncommon for patients with Charcot foot to not know what type of trauma caused the break. He testified that such a lack of knowledge happens frequently and is part of the syndrome. Given the support in the record for the claimant's version of events and the finding of credibility, we find no error in the workers' compensation judge's determination.

La.R.S. 23:1208.1
Next, the defendant maintains that the lower court erred in failing to find that the claimant is precluded from recovery pursuant to La.R.S. 23:1208.1. According to the defendant, the claimant intentionally withheld information regarding his pre-existing diabetic condition at the time he was hired by the company. In particular, Winward points to a questionnaire completed by the defendant wherein he denied knowledge of any prior health problems, including diabetes. This is contrary to medical records which indicate that the claimant was diagnosed as having diabetes in the past.
La.R.S. 23:1208.1 provides as follows:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently *111 displayed in bold faced block lettering of no less than ten point type.
In Resweber, 94-2708, p. 2; 660 So.2d at 9, the supreme court stated that "[t]he purpose of La.R.S. 23:1208.1 ... is to allow the employer to ask prospective or current employees about prior injuries."
In finding La.R.S. 23:1208.1 inapplicable to the instant matter, the workers' compensation judge explained as follows:
[The claimant] suffers from diabetes, this is an ailment which had been previously diagnosed. One of the main issues before the Court were [sic] the extent of his knowledge of his diabetic condition, and whether or not he failed to informproperly inform his employer that he did have diabetes.
Mr. Moss was a very credible witness. He was very forthright with the Court in his testimony. He testified that he had high sugar, that he never really understood that he had diabetes. The employer tried to discredit this testimony by producing medical records which did offer diagnoses of diabetes on at least two to three prior occasions, I believe back in '93 and again in around 1990(sic). However, no witnesses were produced, which indicated that Mr. Moss gave diabetes as a prior history. As we are all aware, we, as listeners take notes and translate and use terms of art, which may not be the exact terminology used by someone who may be less sophisticated than us. So I do not find that Mr. Moss in any way was deceptive when he failed to note on his employment records that he had a prior pre-existing condition of diabetes. His testimony was that he was diagnosed with high sugar, he was given some pills to take, he didn't even finish the bottle of pills which he was given to take, and he didn't think that he had a problem. This was confirmed in the deposition testimony of Doctor Robert Butler, who said that that's not unusual for people who have diabetes not to realize that it was an ongoing and permanent condition, or to realize the seriousness of the condition.
....
It is the finding of this Court that there was no violation of either 1208 or 1208.1, there was no willful misrepresentation, his denial of diabetes on the pre-employment questionnaire was unintentional, he is an unsophisticated and uninformed person, and there was no intent to deceive either the employer or this Court in order to obtain workers' compensation benefits.
We do not find that the trial court was erroneous in such a conclusion. The claimant's health questionnaire was completed at the time he began his employment with Winward Hospital in March 1996. As asserted by the defendant, reference to that form indicates that the claimant did not reveal any prior medical conditions. Moss repeatedly testified that he had previously been diagnosed as having what he referred to as "high sugar" in 1993. He stated that he was told to exercise and was given medication for this condition. The claimant testified that he ceased taking this medication because he thought he was fine. Jonell Moss, the claimant's wife, testified that she actually completed the health questionnaire for her husband due to his difficulty with reading. She stated that both she and her husband knew that he had been diagnosed as having diabetes in 1993. However, the remainder of Mr. and Mrs. Moss' testimony indicates that, while the claimant may have had knowledge of "high sugar" or even diabetes, neither understood the nature of the diagnosis nor that it was permanent. Dr. Butler affirmed in his deposition that it is not unusual for patients not to understand that diabetes is a permanent condition.
Given this basis in the record, we find no error in the lower court's determination that La.R.S. 23:1208.1 does not bar recovery in this matter.

Entitlement to Benefits
The defendant next argues that the claimant did not prove that his injury resulted from an accident arising out of the course and scope of his employment with Winward Hospital. According to this argument, Moss' testimony linking his condition to his work was contradicted by that of Charles Humphries who denied that the claimant informed him that he had injured his foot at the time the two were moving the beds. The defendant *112 maintains that the claimant's contradicted testimony, alone, is insufficient to link the Charcot foot condition to the claimant's employment.
La.R.S. 23:1031(A)[1] allows employees to recover workers' compensation benefits for injuries arising out of and in the course and scope of employment. Griffin v. South Cent. Bell, 93-1394 (La.App. 3 Cir. 10/5/94); 645 So.2d 706. However, the burden of proving an "accident"[2] is a threshold issue of recovery and must be satisfied by the claimant. Id. "[A]s in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." Bruno v. Harbert Intern., Inc., 593 So.2d 357, 361 (La.1992). Furthermore, the supreme court has stated that a claimant's testimony alone may be sufficient to meet the requisite burden of proof if two elements are satisfied: "(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." Id. at 361.
In finding that the claimant had proven that his injuries resulted from a work-related accident, the workers' compensation judge stated as follows in oral reasons for ruling:
As far as whether or not Mr. Moss did suffer an accident in the course and scope of his employment, there was some testimonyor there was some question as to whether or not he properly reported this accident to his employer. According to Mr. Moss he kept his employer informed as he learned about his condition, that initially he noticed some problems with his foot, he went to the doctor about that, went to the VA Hospital. They apparently took some x-rays on his first visit on about August 2nd of 1996, but they did not diagnose the Charcot foot at that time, that was not diagnosed until almost two weeks later, I believe on August 19th of 1996.
His testimony that he subsequently believed that the cause of the foot injury was when he was moving some hospital beds around was confirmed not only by his wife, but by Mr. Charles Humphries, who said that it was after one of the times when they were moving hospital beds that Mr. Moss started limping around. Doctor Butler in his testimony stated that with Mr. Moss' diabetes it's not unusual for a Charcot foot, which is basically a break in the foot, to occur. That diabetes is by far and away the most common reason for this to happen. However, he testified that activities are what usually cause the Charcot foot to occur in that when there is a change in activity level, when there is increased activities, that this is one of the major reasons for Charcot foot to occur. He said that the records indicated that heMr. Moss came into the VA Hospital on the first visit with swelling that had been present for approximately eight days, and that Mr. Moss was unaware of any trauma. He returned again on August 8th with swelling and then on the 19th was when the Lisfranc's condition was diagnosed. Doctor Butler testified that on August 2nd Mr. Moss may not have had the fracture, but that the onset of the Charcot disease occurred probably with the increased activities as described by Mr. Moss.
In his testimony, the claimant stated that he noticed swelling at the time he and Charles Humphries were moving hospital beds and that he reported this swelling to Humphries. Mrs. Moss, too, stated that the claimant returned home from work one day with an injured foot and that he attributed that injury to his work at the hospital. While Charles Humphries' testimony differed, it does not cast serious doubt on the *113 claimant's version of events. Humphries stated that the claimant did not report to him that he had injured his foot while moving the beds and that he did not begin to see the claimant limping until several days after the beds had been moved. While there is a discrepancy between the claimant's version of events and that offered by Humphries as to whether the injury was reported, Humphries stated that he did see the claimant limping after the two men had moved the hospital beds. As noted in the workers' compensation judge's reasons for ruling, the claimant's explanation was found to be credible.[3] Based on the evidence in the record, we do not conclude that this determination was clearly wrong. Accordingly, this assignment lacks merit.

Treatment for Diabetes
In this final assignment of error, Winward argues that the workers' compensation judge erred in awarding treatment for the claimant's diabetic condition. The defendant asserts that, at the most, the claimant has an aggravation of his pre-existing diabetic condition. Therefore, the defendant maintains, the workers' compensation judge should have awarded medical benefits only as they resulted to the dislocation of the Lisfranc joint in the claimant's foot.
An employee's disability is, of course, compensable if it stems from a preexisting condition which has been activated or precipitated by his work. Doucet v. Baker Hughes Production Tools, 93-3087 (La.3/11/94); 635 So.2d 166; Fruge v. Gravity Drainage Dist. No. 5, 94-685 (La.App. 3 Cir. 12/7/94); 647 So.2d 561, writ denied, 95-0066 (La.3/10/95); 650 So.2d 1180. However, entitlement to compensation exists only for the duration of the aggravation. Fuselier v. International Maintenance Corp., 94-792 (La.App. 3 Cir. 2/1/95); 649 So.2d 1197. As previously stated by this court in Bates v. City of Crowley, 613 So.2d 1107, 1112 (La. App. 3 Cir.) (quoting Monistere v. Louisiana Dept. of Hospitals, 273 So.2d 594 (La.App. 1 Cir.1973)), writ denied, 619 So.2d 545 (La. 1993):
[I]t has been repeatedly held that so long as the employee is disabled from the aggravation of a pre-existing defect, he is entitled to compensation. However, where the aggravation ceases and the employee's continued disability, if any, results solely from the pre-existing defect, compensation is no longer due. See for example, Broussard v. R.H. Gracey Drilling Company, 227 La. 882, 80 So.2d 850. See also, Lott v. Southern Farm Bureau Casualty Insurance Co., La.App., 135 So.2d 502, and cases therein cited.
In the present matter, the workers' compensation judge stated as follows in oral reasons for ruling: "[The claimant] is entitled to medical treatment, particularly for the injuries to his foot, and as far as this Court can tell, he is entitled to treatment for his diabetic condition, which was aggravated by the work related incident." Furthermore, the *114 judgment contained the following language: "Employee is entitled to medical benefits, including but not limited to treatment for Charcot foot and diabetes."
Our review of the relevant jurisprudence and medical testimony in this case indicates that the lower court erred in finding the employer liable for medical benefits relating to both the Charcot foot condition and diabetes. As previously noted, the defendant suffered from a pre-existing diabetic condition when he began his work with the employer. However, although he may have been predisposed to such an injury due to his diabetic condition, the Charcot foot was apparently attributable to work-related weightbearing activities. Thus, in this instance, the claimant is entitled to medical benefits only as they relate to the work-related condition. Accordingly, the portion of the lower court judgment requiring that the defendant pay medical benefits related to the claimant's diabetic condition is reversed. However, the defendant will continue to be responsible for those benefits related to the Charcot foot condition.

DECREE
As set forth above, the decision of the Office of Workers' Compensation is affirmed in part, reversed in part. Costs of this proceeding are to be divided equally between the claimant, David Moss, and the defendant, Winward Hospital.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
YELVERTON, J., concurs and assigns reasons.
YELVERTON, Judge, concurring.
I agree with the result. I write separately to state that we do not need to reverse the judgment as it applies to medical benefits: a clarification is all that is necessary. The excellent oral reasons given by the trial judge, as well as the import of her judgment, show that she fully understood the distinction between the Charcot foot aggravation of the pre-existing diabetic condition, and the underlying diabetic condition itself. It was never her intention to award medical benefits for the underlying diabetic condition. The only doctor who appeared in the case was Dr. Butler, a podiatrist, who treated the patient only for the Charcot foot. We are not actually reversing anything. We are simply modifying the judgment for the purpose of clarification. If we order the deletion of the two words "and diabetes" from paragraph four of the judgment, it will eliminate any possible ambiguity, and leave clear what the trial judge intended all along.
NOTES
[1] La.R.S. 23:1031(A) provides as follows:

If an employee not otherwise eliminated form the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
[2] La.R.S. 23:1021(1) provides as follows:

"Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
[3] In evaluating this evidence, we have done so in light of the Louisiana Supreme Court's recent expression in Martin v. Olsten Indus. Services, 98-0463 (La.9/18/98); 718 So.2d 404, wherein the court reversed a compensation award. In Martin, the claimant alleged that he had sustained a work-related injury and that he had reported that injury to a co-worker. This claim was contradicted, however, by the co-worker to whom it was allegedly reported and other workers who testified that the claimant related his injury to work only after a period of delay. Finally, the hospital records relating to the claimant's initial treatment indicated not that he was injured at work, but that he was injured while fishing. In view of the evidence contradicting the claimant's version of events, the supreme court concluded that the claimant failed to prove he suffered a work-related accident by a preponderance of the evidence.

Although similar, we conclude that the instant matter is different from the situation presented in Martin. While Moss' version of events regarding the reporting of the accident differed from that offered by Humphries, other evidence supports the claimant's assertion that his injury was workrelated. Namely, that of his wife as well as Humphries' statement regarding Moss' limping following the moving of the beds. We also note that, unlike in Martin, there was no evidence indicating that Moss ever related his injury to anything other than work. Finally, we a mindful of the credibility decisions made by the workers' compensation judge, decisions that were favorable to Moss' version of events. Therefore, we conclude that the instant matter involves evidence of sufficient weight, in light of the lower court's favorable credibility determinations, to support a finding by a preponderance of the evidence that the event was work-related.