I PATRICIA RIVET MURRAY, Judge.
This is' a workers’ compensation case. Weiser Security Services, Inc. appeals the award of workers’ compensation benefits, penalties, and attorneys’ fees to its former employee, Burnell LaFrance. For the reasons that follow, we reverse.
FACTS AND PROCEEDINGS BELOW
This case arises from two claims for workers’ compensation benefits filed on October 11, 1999 by claimant, Mr. LaF-rance, against his employer, Weiser, for an injury that allegedly occurred on July 14, 1999 while he was assigned to work as a security guard at the Cotton Mills Apartment Complex, and for a re-injury that *342 allegedly occurred on September 18, 1999 while he was assigned to work at the Parc St. Charles Hotel.[1] Weiser answered denying Mr. LaFrance’s allegations, claiming that there were no accidents arising out of the scope of his employment and asserting, among other affirmative defenses, that Mr. LaFranee had forfeited Lhis right to benefits pursuant to La. R.S. 23:1208. Before trial, Mr. LaFranee discharged his attorney and at trial represented himself pro se.
As to the July 14th incident, Mr. LaF-rance testified that he was working the graveyard shift (from 11:00 p.m. to 7:00 a.m.) in the parking lot of the apartment complex. While on his lunch break, which he took in the middle of his shift (at about 4:30 a.m.), he testified that he was walking to the vending machine in the garage to get a soft drink when two New Orleans Police Department (“NOPD”) officers drove up in a patrol car and shined the spotlight on him. The officers got out and started questioning him. Although he told them he was a security guard, he had nothing to document his status. He was away from his post. He had removed his Weiser uniform shirt to avoid getting the spaghetti he was eating on it. And he had no other form of identification on him. The officers thus detained him until a Weiser supervisor arrived and verified his employment status. He was then released.
At about 8:00 a.m. that morning, Mr. LaFranee went to the Weiser office. When he arrived, three Weiser employees were in the office classroom. In his conversation with that trio, he stated that he was upset because the NOPD officers had questioned and hassled him, yet he made no mention either of the officers using excessive force or of him sustaining any physical injuries.
At about 3:00 p.m. that afternoon, Mr. LaFranee telephoned the NOPD Public Integrity Department to make a complaint; he spoke with Sergeant W. Kreider. At the hearing, Sgt. Kreider testified that Mr. LaFranee told him that he 13was at work eating spaghetti and red sauce and that he had taken his shirt off because he did not want to stain it. He further told him that the officers came up, handcuffed him, and sat him in the police car until they determined his identity. He stated that this happened between 3:00 and 4:00 a.m. Sgt. Kreider further testified that Mr. LaFranee did not mention either that the officers used excessive force or that he sustained any physical injuries.
Weiser does not dispute that NOPD came to the apartment that night in response to a complaint from a third party that Mr. LaFranee was parked in front the apartment complex playing loud music and wearing a t-shirt. Weiser, however, does dispute Mr. LaFrance’s claims that he sustained a work-related injury as a result of that incident and that he timely notified them of such injury. Specifically, Weiser disputes Mr. LaFrance’s claim that the *343 officers used force that resulted in physical injuries to him as a result of that incident.
As to the lack of notice, Weiser’s branch manager, James C. Farrelly, Jr., testified that the first time Mr. LaFrance ever notified Weiser of his alleged injury arising out of the July 14th incident was the day after the second, September 18th incident when he telephoned him, informed him he was re-injured at the Hotel, and requested Weiser pay his medical expenses for both alleged accidents.
As to the second incident, Mr. LaFrance testified that he worked for Weiser at the Hotel for only three days — September 17, 18, and 19, 1999. On the second day, at around 12:15 a.m., he testified that he re-injured himself rescuing an elderly guest, identified as Paul Berry, who was trapped in a malfunctioning elevator. He |4stated that before attempting to rescue Mr. Berry, he went to the front desk to call a repairman; however, someone at the front desk told him “[n]o don’t call. You go over there and you go get that man out of the elevator.” While he was getting Mr. Berry out, he testified that the elevator doors slammed shut on him. He further testified that following the incident he completed an accident report and then resumed his normal work duties until his shift was over at 7:00 a.m. He also returned to work on the third day; however, he has not worked since that date.[2]
Subject to defense counsel’s objection, the trial court allowed Mr. LaFrance to call Mr. Berry as a witness via telephone. Mr. Berry testified that- he was trapped on the elevator, that Mr. LaFrance (the security guard) rescued him, and that Mr. LaFrance was injured- when the elevator doors sandwiched him. Overruling defense counsel’s objection, the trial court also allowed Mr. LaFrance to introduce records from the elevator repair company, which he obtained by subpoena, reflecting that one of the Hotel’s elevators was repaired on September 20,1999.
As mentioned earlier, on September 21, Mr. LaFrance telephoned Mr. Farrelly and reported that he had re-injured himself lifting luggage on the job at the Hotel. Significantly, Mr. LaFrance never mentioned the alleged malfunctioning elevator incident. When Mr. Farrelly asked him what his prior work-related injury was, he told him that “he had been hurt when NOPD had. questioned him over by the Cotton Mill back in July” and the officers threw him against the car. Mr. 15Farrelly testified that this was the first time Weiser was ever notified of the alleged July 14th injury. Given his belief that Mr. LaF-rance’s claims were fraudulent, Mr. Far-relly denied the request that Weiser pay his medical expenses for the alleged work-related accidents. This compensation case followed.
Following the hearing, the trial court rendered a judgment in favor of Mr. LaF-rance finding that: (a) he sustained a work-related injury on July 14,1999, and a re-injury on September 18, 1999 “when a malfunctioning elevator injured his chest”; (b) Weiser Security was aware but ignored Mr. LaFrance’s need for medical treatment; (c) he is entitled to benefits from July 14, 1999 through April 1, 2000;[3] (d) he is also entitled to penalties in the amount of $2,000 or 12% of indemnity benefits, whichever is greater, and $2,000 or *344 12% of outstanding medicals, whichever is greater; (e) Weiser Security, is to pay all costs; and (f) his prior attorney is entitled to $1,200 for representing him. This appeal by Weiser Security followed.
DISCUSSION
Weiser Security assigns as error, among other things, the trial court’s factual finding that Mr. LaFrance sustained two work-related accidents and its failure to find Mr. LaFrance forfeited his right to benefits under La. R.S. 23:1208, 23:1208.1, or both. The latter forfeiture issue was not directly addressed by the trial court; the court indirectly addressed it in denying defense counsel’s evidentiary objections, noted above, regarding the testimony of Mr. Berry and the elevator repair record, commenting:
1 K“I find it hard to believe — I want this on the record — -very hard to believe that nobody came through here and testified knowing anything or any problems about that elevator. Now, whether or not he was hurt is another determining factor. You’re trying to — because the man was dishonest in several things, you want to say he’s dishonest in everything. And that’s not life, you know.”
The trial court’s comment touches on what we find to be the dispositive issue; namely, whether Mr. LaFrance carried his burden of proving by a preponderance of the evidence that either of the alleged work-related accidents occurred. Bruno v. Harbert Int% Inc., 593 So.2d 357, 361 (La.1992)(noting that in workers’ compensation cases, as in other civil cases, the plaintiff-worker has the burden of proving a work-related accident by a preponderance of the evidence.) In addressing that issue, we separately address each incident.[4]

The July 14th Incident

At the hearing, the sole evidence Mr. LaFrance offered in support of the occurrence of a work-related injury on July 14, 1999 was his own testimony. Although a plaintiff-worker may rely solely on his own testimony to establish an accident, the jurisprudence has crafted two requirements that must be satisfied to do so: “(1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident.” Bruno, 593 So.2d at 361. A worker’s testimony will not suffice “if co-workers are unable to confirm his version, or if in fact they deny that things proceeded in the manner indicated by the 17claimant. Internal inconsistencies or vagueness in the claimant’s version, while not necessarily fatal, certainly do not assist him in discharging his burden.” 13 H. Alston Johnson III, Workers’ Compenation Law and Practice: Malone & Johnson, Louisiana Civil Law Treatise § 253 (3rd ed.1994).
Although the circumstances that constitute corroboration vary from case to case, a commentator has articulated the following five pertinent considerations:
(1) testimony by spouse, co-workers or friends to the effect that the claimant related the event to them soon afterwards, in substantially the same manner that he now recounts it, is corroborative but contradictory testimony on this point may be damaging;
*345 (2) medical testimony consistent with the claimant’s version or in fact inconsistent with it;
(3) filing of a prompt accident report, or the lack of it;
(4) continuation of work thereafter, or the lack of it;
(5) past medical history and some others.
Id. Utilizing the above five factors, we conclude that the trial court was manifestly erroneous to conclude, based solely on Mr. Lafrance’s testimony, that he was injured in a work-related accident on July 14.
First, Mr. LaFrance’s story that the NOPD officers put handcuffs on him and then threw him against the car door injuring his chest and lower back was not corroborated by the testimony of fellow Weiser co-workers. Eddie Mitchell, the Weiser project manager, testified in response to questions by the trial court that Mr. LaFrance talked to him a few days after the incident but never mentioned any kind of physical injury.
As mentioned, within hours following the incident, Mr. LaFrance went to the Weiser office and told his story of the NOPD detaining him to the trio who | ¡happened to be present in the office classroom. One of the trio was Bryan Latino, Weiser’s accounts manager. Mr. Latino testified that Mr. LaFrance was upset about the police questioning him because he did not have his uniform shirt on, but made no mention of any physical injuries.
Another of the trio was Mr. Farrelly, Weiser’s branch manager. Mr. Farrelly testified that Mr. LaFrance never said anything about the police physically injuring him. When the trial judge questioned Mr. Farrelly on this point, the following colloquy took place:
“THE COURT: Did he tell you what NOPD did to him? Did he say anything about them putting handcuffs on him or throwing him up against the car or anything like that?
THE WITNESS: No, ma’am.
THE COURT: He didn’t say anything like that to you-all?
THE WITNESS: No, ma’am. No, ma’am.”
Mr. Farrelly further testified that had Mr. LaFrance complained of being injured as a result of that incident, Weiser has certain procedures it required to be followed. Describing those procedures, Mr. Farrelly stated that the employee is required to “come into our office, fill out a first report of injury. We would set that person up to go see a doctor so they could be checked out.” He further stated that the employee would also be required to undergo drug testing. It is not disputed that Mr. LaFrance did none of these things following the July 14th incident.
Second, the medical records regarding the July 14th incident contradict Mr. LaF-rance’s testimony that he sought treatment “the same day of the incident.” The first time he sought treatment for the incident was on September 8, 1999 when he was seen by Dr. Dwight L. McKenna, a physician who had treated him for several laPrior motor vehicle accidents.[5] Dr. McKenna’s report indicates that Mr. LaF-rance was injured on July 14,1999 at work *346 and that “'he hit his anterior chest wall on an automobile door.” Mr. LaFrance’s complaints when he presented on September 8th were pains in his anterior chest wall “with deep inspiration” and that “it hurt to cough.” Only ten days later the second incident occurred at the Hotel.[6]
In both his deposition and at the hearing, Mr. LaFrance testified that he did not work between July and September 1999 because Dr. McKenna said he was totally disabled as of July 1999. Dr. McKenna, however, testified in his deposition that he never ordered Mr. LaFrance not to work between July 14, 1999 and September 8, 1999 and that such an order “would have been impossible. I hadn’t seen him.” That statement is supported by Dr. McKenna’s records, which reflect that Mr. LaFrance first presented for the July 14th injury on September 8,1999.
Third, contrary to Mr. LaFrance’s contentions that he completed a timely incident report, no such report was found in Weiser’s records. Moreover, Mr. LaF-rance’s personnel records reflect that when he was hired by Weiser, he was instructed and tested on the company’s stringent policies regarding workers’ compensation injuries.[7] Despite his awareness of these policies, none of them were followed.
| inFourth, Mr. LaFrance testified that he wanted to return to his post and to continue working on the night of the incident, but the NOPD officers insisted that he go home. He further testified that he returned to work as scheduled on his next work day. Mr. Mitchell, Weiser’s project manager, testified that Mr. LaFrance continued to work through the end of that week without complaining of any injuries. The week after the NOPD incident, Weiser’s contract with the Cotton Mill Apartment complex ended.[8]
Fifth, and finally, the record reflects that Sgt. Kreider, who as noted above took Mr. LaFrance’s phone complaint, testified that Mr. LaFrance never mentioned either any use of excess force by the officers during that incident or any physical injury resulting from that incident. Rather, his *347 complaint was that the police officers had harassed him. More important, Sgt. Kreider testified that he was positive that Mr. LaFrance had not complained of physical abuse or injuries. The reason he was positive, Sgt. Kreider explained, was because if Mr. LaFrance had done so, then he would have been required to follow the department’s special procedures and, pursuant thereto, would have referred the complaint to another department. In this regard, Sgt. Kreider testified:
“Q: And at any time, did Mr. LaFrance indicate to you that the police either used excessive force or injured him in the incident?
A: No, he did not.
lnQ: And if he did, were there other procedures you would have had to follow?
A: Most definitely. This would not have been an informal complaint as it was handled. It would have been a formal complaint, formal statement would have been taken from him; and we would have also requested that he come in and photographs to be taken and medical records, any medical documentations he had of the injury. This was a one-on-one incident between our officers. He had no witnesses. His complaint, as he related it to me, was that the officers were rude to him....
Q: So if I understand correctly, he was disappointed more on the fact that he was questioned in the tone that they talked to him, never complaining of a physical personal injury or excessive force?
A: That’s correct.
Q: And you would know that because there would be procedures to follow had he alleged or complained of that?
A: That’s correct. It then becomes a formal investigation wherein it’s turned over to a supervisor to handle with a formal statement taken from the officers as well as Mr. LaFrance. I would have requested him to come in for photographs and to bring any medical documentations.”
Based on our review of the record in this case, we conclude that although a worker’s testimony alone may, if the two requirements enunciated in Bruno are met, satisfy the worker’s burden, neither of those requirements were satisfied in this case. First, as explained above, there was an abundance of other evidence that cast serious doubt on and discredited Mr. LaFranee’s testimony that the officer’s threw him against the car door and seriously injured his chest and lower back. Second, the co-workers’ testimony did not corroborate, but rather contradicted, Mr. LaFrance’s testimony. The consistent testimony by the other witnesses was that immediately after the incident Mr. LaF-rance’s version of the incident was that the officers were rude and harassed him and that he never complained |1?about any physical harm or injuries. We thus conclude that the trial court’s finding that Mr. LaFrance sustained a work-related injury on July 14,1999, and that he was therefore entitled to benefits and medical expenses as a result of that work-related injury from July 14, 1999 through September 18, 1999, was manifestly erroneous.

September 18th Incident

The trial judge found that Mr. LaFrance sustained a work-related injury on September 18, 1999 as a result of “a malfunctioning elevator injur[ing] his chest.” Weiser points out that the only evidence Mr. LaFrance offered in support of the occurrence of that injury was the telephone testimony of Mr. Berry, the records of the elevator repair company, and his own testimony. Weiser contends that both Mr. Berry’s testimony and the elevator repair records were not “competent evi *348 dence” under La. R.S. 23:1317(A), leaving only Mr. LaFrance’s testimony, which was insufficient to establish a work-related accident.
In workers’ compensation cases, unlike in other civil cases, a workers’ compensation judge’s factual findings need only be based on “competent evidence.” Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 10 (La.3/4/98), 708 So.2d 375, 381 (citing La. R.S. 23:1317(A)). The distinction arises as a result of the relaxation of evidentiary rules in workers’ compensation cases expressly sanctioned by that statute, which provides: “[t]he workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence.” La. R.S. 23:1317(A). Hence, “when a reviewing court evaluates the factual findings of a [workers’ | ^compensation judge] under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record.” Chaisson, 97-1225 at p. 10, 708 So.2d at 381.
The Supreme Court in Chaisson construed the term “competent evidence” in this context as evidence having “some degree of reliability and trustworthiness” and “of the type that reasonable persons would rely upon.” 97-1225 at pp. 12-13, 708 So.2d at 382. The Court instructed that the determination of whether evidence is “competent” is one that “must be made on a case-by-case basis under the particular facts and circumstances.” 97-1225 at p. 13, 708 So.2d at 382. Applying that standard, the Court in Chaisson held that double hearsay — testimony “twice removed from the in-court declarant” (a witness’ testimony regarding a telephone conversation to which the witness was not a party) — was not competent evidence. Id.
Applying those principles to the telephone testimony of Mr. Berry, the record reflects that this testimony was taken by someone placing a long distance phone call from the judge’s chambers to someone who purported to be Mr. Berry and who purported to be located in Kentucky. Even assuming that Mr. Berry was trapped in the elevator,[9] no authentication that the person on the phone was Mr. Berry was offered. Nor was the defense afforded an opportunity to depose Mr. Berry given Mr. LaFrance’s failure to list Mr. Berry on the witness list or to give any notice of his intent to call this surprise witness. This unorthodox method of introducing testimony cannot be sanctioned simply because this is a workers’ | ucompensation proceeding or because the plaintiff opts to proceed pro se.[10] Eviden-tiary rules are relaxed, but not repudiated in workers’ compensation cases. We thus conclude that the telephone testimony of Mr. Berry was not competent evidence.
As to the elevator repair records, Weiser stresses that no one from the elevator repair company testified at trial to provide a foundation for this evidence and that defense counsel had never seen these records. Although we agree with Weiser that the elevator repair records ordinarily would not be admissible evidence, those records are the exact type of documentary *349 evidence for which the pragmatic rule allowing relaxation of technical evidentiary rules in administrative hearings, like workers’ compensation cases, was adopted. As the Court in Chaisson explained, “most hearsay evidence in administrative hearings is generally reliable documentary evidence, such as correspondence, physician’s reports, and the like.” Chaisson, 97-1225 at p. 11, 708 So.2d at 382. Since the elevator repair records fall within that category, this was competent evidence.
Nonetheless, as Weiser points out, no connection was established between that elevator repair on September 20th and the alleged incident on September 18th. The sole evidence offered to support that connection was Mr. LaFrance’s testimony. The issue thus becomes whether that evidence was sufficient to satisfy Mr. LaF-rance’s burden of establishing a work-related accident by a preponderance of the evidence. In addressing this issue in Daspit v. Southern Eagle Sales & Services, Inc., 98-1685, p. 4 (La.App. 4 Cir. 1/20/99), 726 So.2d 1079, 1081, we explained:
To meet this burden, the testimony must show more probably than not that an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry his burden. Likewise, the plaintiffs case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation. Prim v. Shreveport, 297 So.2d 421, 422 (La.1974).
In making this determination of whether a plaintiff has proved the occurrence of a work-related accident, the jurisprudence generally has considered four factors: (1) late report, (2) supervisor and co-worker testimony, (3) medical evidence, and (4) prior injuries. 1 Denis Paul Juge, Louisiana Workers’ Compensation § 8:1 (2d Ed.2001).[11] We separately address each of these factors.
(1) Late report
Although untimely reporting is not fatal to a claim, “when considered with other factors, the late reporting of the accident will cast doubt on the occurrence of a job accident.” Id. In this case, Mr. LaFrance alleges that he immediately completed an accident report at the Hotel. At trial, however, correspondence from the Hotel was introduced, which stated that “the night manager did not receive an accident report from Mr. LaFrance” and that its “records and the daily security records do not reflect any such accident.”
It ¡While Mr. LaFrance called Weiser and spoke to Mr. Farrelly after completing the shift on which this incident allegedly occurred, as discussed elsewhere, he told Mr. Farrelly that he was re-injured lifting luggage. He never mentioned an injury as a result of a malfunctioning elevator. Nor did he comply with Weiser’s stringent workers’ compensation policies noted earlier.
(2) Supervisor and co-worker testimony
As noted, Mr. LaFrance did verbally report an injury that purportedly occurred on September 18th while lifting luggage to his supervisor, Mr. Farrelly; however, that report directly contradicted his later claim of an injury involving a malfunctioning elevator. “[W]hen the employee testifies that he told his supervisor *350 about the accident or states that the accident was witnessed by co-workers and their trial testimony does not confirm his testimony, the court may conclude that no accident happened.” Id. Such is the case here.
(3) Medical evidence
The medical evidence in this case reflects that Mr. LaFrance told different versions of the accident to different doctors. On September 24, 1999, he initially treated with Dr. McKenna and told him the lifting luggage story. Dr. McKenna’s report states:
“The patient returned to work and on September 18,1999 and while lifting luggage he reinjured his chest wall. He continued to try to work but stated that the pain began to be too great. On September 21, 1999 the patient stated that he was unable to work any longer. He presents to my office on September 24, 1999 continuing to complain of anterior chest wall pain and stating that he could no longer do the work required as a security guard.”
117Pr. McKenna’s records reflect that Mr. LaFrance never mentioned an elevator malfunctioning incident. When confronted on cross-examination at the hearing with these early medical records, Mr. LaFrance testified:
“Q: So it’s your testimony you mentioned [the malfunctioning elevator incident] to him, but he conveniently left it out?
A: I mentioned the elevator to him. I’m positive I did. I also told him that I was lifting luggage as well. I did state that as well, Your Honor, to Dr. McKen-na.
Q: So it’s your testimony that you did tell him about the elevator. He just didn’t put it in his report?
A: I told Doc about the elevator incident. I told Doc about the luggage incident, whatever he dictated at the time. I went to another doctor at the time, which was my workers’ comp attorney — he sent me or directed me to Dr. Mark Walker. And from there on I was going to Dr. Mark Walker. I had similar injuries, I guess, in both, Your Honor.”
As Mr. LaFrance testified, he did not return to Dr. McKenna following the September 24th office visit. Instead, on October 11, 1999 he saw Dr. Mark Walker, a chiropractor, and told him the malfunctioning elevator story. Dr. Walker testified in his deposition that at that initial office visit Mr. LaFrance gave the following history:
“He mentioned at the time that he was injured on the job. Patient was trying to help an elderly person who was stuck in an elevator. As he was trying to pry the door opened they sandwiched him pinning him in the low back and chest area. Patient filled out an accident report. Patient was never able to go to a doctor. Patient developed low back pain and chest pain after the accident.”
Contrary to Mr. LaFrance’s claim that he was not able to see a doctor, he saw Dr. McKenna within days of the alleged September 18th accident. “One of the most important factors considered by the courts is whether the early medical records support the history of a job accident. The failure of these | yearly records to verify the job accident will often be the key in a denial of workers’ compensation benefits.” Juge, supra, at § 8:1. Here, the early medical records do not support the trial court’s finding of a work-related injury arising out of a malfunctioning elevator door slamming shut on Mr. LaFrance.
*351 (4) Prior injuries
Although a prior, similar injury does not disqualify an employee from claiming workers’ compensation, a prior injury becomes relevant “if the employee denies that he ever had such injury or denies that the prior injury was still causing him problems prior to his ‘accident’ at work and this denial is contradicted by the evidence at trial.” Juge, supra, at § 8:1. In this case, Mr. LaFrance saw Dr. McKenna for a prior, similar injury only ten days before this alleged accident.[12]
On similar facts, the Supreme Court in Martin v. Olsten Indus. Services, 98-0463 (La.9/18/98), 718 So.2d 404, reversed the trial court’s finding of a work-related accident. The employee claimed a work-related accident arising out of a metal wire puncturing his big toe. The medical records, however, reflected that while the employee was in the hospital, he told a nurse that “ ‘he went fishing a few days ago & stuck an object in his foot.’ ” Martin, 98-0463 at p. 2, 718 So.2d at 405. Although the employee claimed that he displayed his foot to a co-worker on the day of the alleged accident, the co-worker testified to the contrary. The co-worker testified that |iahe was unaware of the alleged work-related injury until after the employee was released from the hospital. The co-worker, similar to several witnesses in this case, also testified that “if claimant had told him about the injury, he would have sent him to see their supervisor, Yancey Jacob, and then he himself would have ‘followed up’ with Jacob regarding the injury.” Id. Based on those facts, the Supreme Court concluded that the employee had failed to prove by a preponderance of the evidence his injury was caused by a work-related accident. We reach the same result in this case.
Summarizing, Mr. LaFrance’s inconsistent versions of the manner in which he was re-injured on September 18th — lifting luggage versus prying elevator doors open — leads us to conclude that he failed to establish the occurrence of a work-related accident by a preponderance of the evidence. At best, the evidence in the record “leaves the probabilities equally balanced” and “shows only a possibility of a causative accident or leaves it to speculation.” Daspit, 98-1685 at p. 4, 726 So.2d at 1081. The trial court was therefore manifestly erroneous in finding that Mr. LaFrance sustained a work-related accident on September 18, 1999 “when a malfunctioning elevator injured his chest.”

DECREE

For the foregoing reasons, we reverse.
REVERSED.

. By way of background, Mr. LaFranee was born on November 10, 1970. He attended school through the eleventh grade, obtained his G.E.D., attended some college courses, and then enrolled in the military police division of the army. In October 1994, he was discharged from the army for failing to give a forthright answer regarding his arrest record. During the hearing in this case, the trial court similarly admonished Mr. LaFranee for failing to be forthright in responding to a question regarding any prior arrests. Mr. LaF-rance's prior jobs included working for the New Iberia Sheriff’s Office and for another security company. Although he stated that he has never filed a workers’ compensation claim, he admits to having filed multiple other personal injuries claims arising out of prior motor vehicle accidents as well a claim arising out of a prior alleged on-the-job injury on the job.

. At the hearing, he testified that he has not worked since September 19, 1999. However, he concedes he is no longer disabled from the alleged September 18th work-related accident.

. The trial court apparently accepted Mr. LaFrance's argument that he treated for six months following the September 18th incident.

. Our finding in favor of Weiser on this issue renders it unnecessary for us to address the other assignments of error. Nonetheless, we acknowledge that given Mr. LaFrance’s proven lack of candor on several issues, which the trial court recognized, an alternative basis for reaching the same result is La. R.S. 23:1208.

. In both his deposition and at trial, Mr. LaF-rance admitted that he was in about six motor vehicle accidents and sustained one on-the-job injury prior to going to work for Weiser. He also admitted that he was in two additional motor vehicle accidents following the September 18th incident, yet he failed to mention this to Dr. Walker who was still treating him. Following each of these accidents, he not only sought medical treatment, but also made personal injury claims.

. Mr. LaFrance also related this incident to Dr. Walker, who he saw on October 11th for the September 18th incident. Dr. Walker testified in his deposition that when asked about previous history, Mr. LaFrance related that "[o]n July 14th he was working on the job, patient was arrested by the NOPD. They thought he was a burglar. Patient had arms cuffed behind him. He was pushed into the point of the door catching the center chest area and then pushed into the back seat. Patient hit something with his low back as he landed. Patient had chest and low back pain.”

. For all workers' compensation injuries, Weiser’s written policy requires:
1. Within 24 hours of an injury you will have a Claims Investigator begin to investigate the claim.
2. The usual drug and alcohol testing will be done.
3. The injured employee's entire medical history will be investigated, including medical questionnaires on file. FALSIFYING MEDICAL HISTORY WILL WAIVE YOUR RIGHTS TO WORKERS COMPENSATION
4. Any and all witnesses will be thoroughly questioned.
5. Approved claims will be handled by a professional Claims Representative whose objective will be to provide adequate medical treatment and keep you working or get you back to work as soon as possible.
6. CASES DEEMED FRAUDULENT WILL BE TURNED OVER TO THE PROPER AUTHORITIES FOR CRIMINAL PROSECUTION.
On June 25, 1998, when he was hired, Mr. LaFrance certified that he "read and understood” these policies.

.Mr. LaFrance acknowledged that Weiser's contract with the apartment ended in July 1999, and apparently he was not placed elsewhere by Weiser until September 1999.

. The sole proof regarding the identity of the purported guest that was trapped in the elevator was a Hotel receipt reflecting that an individual by that name from Kentucky was a guest at the Hotel on the date in question.

. In allowing this testimony, the trial court cited two reasons: (i) the “lax rules of evidence in workers' compensation cases” and (ii) the fact that Mr. LaFrance was appearing pro se. As to the latter point, the court noted he "really wouldn't expect [Mr. LaFrance] to do all of the requirements of an attorney.”

. We note that these factors are simply another way of articulating the five-factor test we applied in determining that Mr. LaFrance failed to establish by a preponderance of the evidence that the July 14th incident was a work-related accident.

. As noted elsewhere, Mr. LaFrance also sustained similar injuries in prior motor vehicle accidents for which he was treated and filed personal injury claims, yet he failed to disclose such prior injuries on his employment application with Weiser. Weiser asserts that lack of candor by Mr. LaFrance in completing the employment application as grounds for invoking the forfeiture provision set forth in La. R.S. 23:1208.1. We do not reach this issue.